DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Eugene Terry Young has appealed from his drug convictions and subsequent sentences in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} On November 22, 2004, Defendant-Appellant Eugene Terry Young was indicted on a multi-defendant indictment. Appellant faced ten counts in the indictment. The following counts are relevant to the instant appeal: two counts of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041 (counts one and two); one count of illegal manufacture of drugs, in violation of R.C. 2925.04(A) (count three); and two counts of aggravated possession of drugs, in violation of R.C. 2925.11 (counts four and six). Appellant pled not guilty to all counts in the indictment.
 {¶ 3} On March 10, 2005, a jury trial commenced and Appellant was subsequently found guilty of both counts of illegal assembly or possession of chemicals for the manufacture of drugs (counts one and two) and both counts of aggravated possession of drugs (counts four and six). Appellant was found not guilty of count three, illegal manufacture of drugs.
 {¶ 4} On March 16, 2005, the trial court imposed the following sentences on Appellant: 1) three years incarceration on count one, illegal assembly or possession of chemicals for the manufacture of drugs, a felony of the third degree; 2) three years incarceration on count two, illegal assembly or possession of chemicals for the manufacture of drugs, a felony of the third degree; 3) three years incarceration on count four, aggravated possession of drugs, a felony of the third degree; 4) nine months incarceration on count six, aggravated possession of drugs, a felony of the fifth degree; and 5) three years incarceration on count seven, failure to comply with an order or signal of a police officer, a felony of the third degree. The trial court declined to sentence Appellant on his remaining convictions because they merged with the previous counts. The sentences imposed for counts one, two, four, and six were ordered served concurrently to each other and count seven was ordered served consecutively and not concurrently with the sentences imposed on the other counts. Accordingly, Appellant was sentenced to serve six years of incarceration.
 {¶ 5} Appellant has timely appealed his convictions for illegal assembly or possession of chemicals for the manufacture of drugs and aggravated drug possession and the sentences imposed by the trial court. Appellant has asserted three assignments of error, two of which have been consolidated for ease of analysis.
 II Assignment of Error Number One
"APPELLANT'S TWO CONVICTIONS OF ILLEGAL ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF DRUGS AND TWO CONVICTIONS OF AGGRAVATED POSSESSION OF DRUGS WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
Assignment of Error Number Two
"THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S CRIMINAL RULE 29 MOTION TO DISMISS THE ILLEGAL ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF DRUGS AND AGGRAVATED POSSESSION OF DRUG CHARGES FOLLOWING THE CONCLUSION OF THE CASE."
 {¶ 6} In his first and second assignments of error, Appellant has argued that his drug convictions were both against the manifest weight of the evidence and based on insufficient evidence. Specifically, he has argued that conflicts in the evidence and testimony show that his convictions were not supported by a manifest weight of the evidence and that the State failed to prove the necessary elements of the charges. We disagree.
 {¶ 7} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id, at paragraph two of the syllabus; see, also,Thompkins, 78 Ohio St.3d at 386.
 {¶ 8} In State v. Roberts, this Court explained:
"[S]ufficiency is required to take a case to the jury. * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. (Emphasis omitted).
 {¶ 9} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 10} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. Karchesv. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 11} Appellant was convicted of two counts of illegal assembly or possession of chemicals for the manufacture of drugs. Pursuant to R.C. 2945.041: "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II[.]"[1] Appellant was also convicted of two counts of aggravated possession of methamphetamine. Pursuant to R.C.2925.11(A), "No person shall knowingly obtain, possess, or use a controlled substance." Due to methamphetamine being a schedule II drug, Appellant's possession was escalated to aggravated possession. See R.C. 2925.11(C)(1).
 {¶ 12} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C.2925.01(K). R.C. 2901.21(D)(1) sets forth the requirements for criminal liability and provides: "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession."
 {¶ 13} "Possession may be actual or constructive." State v.Kobi (1997), 122 Ohio App.3d 160, 174. Constructive possession has been defined as "knowingly exercis[ing] dominion and control over [the drugs and manufacturing items], even though [they] may not be within his immediate physical possession." State v.Hankerson (1982), 70 Ohio St.2d 87, syllabus. See, also, Statev. Wolery (1976), 46 Ohio St.2d 316, 329. Furthermore, ownership need not be proven to establish constructive possession. Statev. Mann (1993), 93 Ohio App.3d 301, 308. Circumstantial evidence is sufficient to support the element of constructive possession. See State v. Jenks (1991), 61 Ohio St.3d 259, 272-73.
 {¶ 14} During the trial, the State presented testimony from several law enforcement officers, Appellant's co-defendants, and his sister-in-law. The State also showed a video and pictures of the residences involved in the alleged meth activity. Officer Robert Seiler of the Akron Police Department ("APD") testified to the following. On November 4, 2004, Officer Seiler attempted to pull Appellant over for speeding and Appellant failed to comply. An eight minute chase ensued, which resulted in Appellant breaking several traffic laws. The pursuit was called off before Appellant could be caught, but a felony warrant was issued for his arrest.
 {¶ 15} Kathy Wilmoth ("Deputy Wilmoth") a deputy sheriff/canine officer with the Summit County Sheriff's Department ("SD") testified that on November 11, 2004, she and her canine partner responded to a residence at 4901 Provens Drive ("Provens house") in Green to assist in the execution of a warrant. Appellant was not at the residence, but another man and a woman were there. Deputy Wilmoth conducted a pat down search of the woman, Shannon Westfall ("Westfall"), and discovered a knife and a zip-lock baggy filled with smaller zip-lock baggies. Deputy Wilmoth and her canine partner conducted an exterior sweep of the car parked in the driveway at the Provens house and the canine alerted to the presence of the odor of narcotics. Mr. Gillman ("Gillman"), the vehicle's owner, gave permission to search the vehicle. Deputy Wilmoth did not see Appellant during her investigation at the Provens house.
 {¶ 16} Ronald Black ("Deputy Black") with the SD testified to the following. When he participated in the execution of the arrest warrant for Appellant, he encountered Gillman and Westfall. Gillman and Westfall stated that they did not live in the Provens house and when Westfall was asked how she entered the house she provided more than one explanation. Deputy Black proceeded to conduct a sweep of the home to determine if Appellant was present. Deputy Black noticed several items used to make methamphetamine in the home so he and the other deputies exited the home and called the narcotics unit. While waiting for the narcotics unit, Deputy Black conducted the search of Gillman's car and found Sudafed packages, some knives, some scales, pseudoephedrine, a marijuana cigarette, notebooks, test tubes, rolling papers, and a black case. The back seat contained seven or eight bags and looked like someone had been living in the car.
 {¶ 17} Gillman testified to the following. On November 11, 2004, Gillman was living in Appellant's house on East Avenue ("Appellant's house") in Akron. Gillman's car was full of his belongings; the back seat and trunk were full and there was barely room for two people in the front seat. Gillman admitted to using methamphetamines ("meth") before and using them around the time in question; he also admitted using them with Appellant. Gillman admitted buying meth from Appellant and witnessing Appellant manufacture meth. Gillman denied knowing how to make meth or manufacturing it himself, but he did admit that he was convicted of felony assembly of chemicals for the manufacture of drugs; Gillman also admitted that he would buy Sudafed and other cold pills and then sell them to a meth manufacturer at a higher price. Gillman testified that per an agreement with the State, if he testified truthfully the State would drop two counts against him and he would plead guilty to one count of illegal assembly or possession of chemicals for the manufacture of drugs, a felony of the third degree. Gillman admitted that the items listed by Deputy Black as found in Gillman's car were in his car.
 {¶ 18} Gillman continued testifying to the following. On November 11, 2004, he and Westfall went to the Provens house, which was Appellant's parents' house, because Appellant asked Gillman if he wanted to come over to party and relax. As soon as the two arrived at the house, which was around 8:30-9:00 a.m., they started getting high on meth with Appellant and another woman. After about forty-five minutes of getting high, Appellant and the woman left to get a muffler. Gillman testified that the boxes containing the meth manufacturing products the police found in the basement of the Provens house belonged to Appellant; Gillman had also seen the boxes in Appellant's house. Gillman denied "cooking" meth on November 11, 2004.
 {¶ 19} On cross-examination, Gillman testified to the following. Not including the current case, he actually has two prior convictions for illegal assembly or possession of chemicals for the manufacture of drugs and received one sentence for both convictions. Gillman denied moving things into the Provens house in order to manufacture meth. Gillman testified that none of the boxes in the Provens house were his and that he did not break into the house.
 {¶ 20} On re-direct examination, Gillman testified that he would not lie under oath and commit perjury to stay out of prison because "[i]t would just get me there quicker."
 {¶ 21} Greg Taylor ("Deputy Taylor") of the SD testified that he was involved in executing the arrest warrant for Appellant at the Provens house. He reiterated Deputy Black's testimony concerning the discovery of several items used to make meth in the basement.
 {¶ 22} Detective Mark Kreiger ("Det. Kreiger") of the Twinsburg Police Department and member of the Summit County Drug Unit testified to the following. He explained that the following items are used when making meth: mason jar or mason jar bucket; Sudafed or any cold medicine with pseudoephedrine; acetone; HEET (a gas line antifreeze); water; muriatic acid; Red Devil Lye; iodine; coffee filters; and red phosphorus from matches. Det. Kreiger responded to the Provens house to investigate a possible meth lab. After noticing a breeze in a back room of the house, he moved the drapes and discovered that a door in the back of the house had a broken window by the door latch. Based on what he observed in the basement of the Provens house and the strong chemical odor of the house, Det. Kreiger believed the boxes in the basement contained a meth lab. Det. Kreiger obtained a search warrant for the house and proceeded to inspect the items in the basement. He discovered numerous chemicals, cans of acetone, muriatic acid, over three pounds of iodine, containers of iodine crystals, 140 grams of red phosphorus, and one or two bags of pseudoephedrine. The items were contained in about five boxes. After looking in Gillman's car, Det. Kreiger determined the boxes would not have fit in the car.
 {¶ 23} Det. Kreiger continued his testimony, testifying to the following. Evidence in the basement led him to believe that it was an operating meth lab and that meth was manufactured within a day of the search. He found two bottles of red phosphorus that were still "wet" in the basement; there were coffee filters that were still damp and they found "actual methamphetamine that was also still damp[.]" They also discovered the refuse that accompanies making meth, such as empty bottles of HEET, blister packs of pseudoephedrine, and wet coffee filters. The search also revealed a receipt on the kitchen table for a Sprint phone with Appellant's name on it dated November 9, 2004. After the search and containment of the Provens house a search warrant was executed at Appellant's house.
 {¶ 24} Det. Kreiger testified to the following regarding the execution of the warrant at Appellant's house. After knocking on the door and hearing a woman "run around" the police broke the door down and began their search. Det. Kreiger immediately smelled a strong chemical odor. During the search, Det. Kreiger found a large pipe used to smoke meth, bottles of HEET hidden under the floor, and a package of Sudafed. In a dumpster directly outside the apartment Det. Kreiger found empty bottles of HEET and large numbers of Sudafed blister packs. Based on what he found Det. Kreiger concluded that meth was being manufactured at Appellant's house.
 {¶ 25} Det. Kreiger testified to the following on cross-examination. Det. Kreiger believed that the items found in the Provens house belonged to Appellant. Det. Kreiger confirmed that none of the items seized during the search were tested for fingerprints. Based on the evidence, Det. Kreiger did not believe Gillman or Westfall were manufacturing meth at the Provens house. Det. Kreiger testified that neighbors informed him that Appellant was at the Provens house earlier in the week of November 11, 2004; one witness informed him that Appellant's van had a lot of boxes in it, but he was not sure if they witnessed him taking the boxes out of the van. Also, some items in the home indicated that Appellant had been in the Provens house during the week.
 {¶ 26} Jackie Young ("Young"), Appellant's sister-in-law testified to the following. Appellant's parents went on vacation a week before the police searched the Provens house and Young had a key to maintain the house. Prior to the police searching the home, Young noticed Appellant's van behind the house and when she entered the house she could tell someone had recently been in the house. Young noticed that mail addressed to Appellant had been opened. Young testified that there were about three or four days between her last visit to the house and the police searching the house. Young had never seen the items the police removed from the Provens house in the house before.
 {¶ 27} Susan Barker of the SD and the Summit County Drug Unit testified that she was working with Det. Kreiger on November 11, 2004 and accompanied him to the Provens house. Her testimony concerning the items recovered from the house mirrored Det. Kreiger's testimony; as did her opinion on meth being manufactured in the Provens house.
 {¶ 28} Kevin Borchert ("Agent Borchert"), a special agent with the Drug Enforcement Agency testified to the following. Agent Borchert was called by Det. Kreiger to assist in the clean-up of the meth lab at the Provens house. Agent Borchert labeled the basement as a "dismantled [meth] lab." Based on his training and experience, Agent Borchert determined that the lab had recently been operational. The wetness of the recovered meth indicated that the cooking process had just finished and the boxes and totes in the basement contained the materials needed to manufacture meth.
 {¶ 29} Westfall testified to the following. Westfall was dating Gillman on November 11, 2004, but they had recently broken up. Although she used meth, Westfall denied ever participating in manufacturing it. When asked if she ever witnessed Gillman cook meth from the time they met until the police searched the Provens house, Westfall answered "[n]o." She went to the Provens house on November 11, 2004 with Gillman to use the hot tub and party. When they arrived at the house, Gillman did not take anything out of the car. While in the house, Westfall spent time smoking meth and talking with Appellant's girlfriend. The police arrived at the house about 10-15 minutes after Appellant went to get a new muffler. Westfall testified that contrary to Appellant's insinuations Gillman had not recently manufactured meth in the Provens house. Westfall admitted that she made a plea agreement with the State that if she testified truthfully she could plead guilty to misdemeanor attempt to possess meth.
 {¶ 30} Westfall testified to the following on cross-examination. She was being truthful when she testified that Appellant was in the Provens house the morning of November 11, 2004. Westfall admitted telling the police three different stories on November 11, 2004, but explained that initially she did not understand their questions and made mistakes in her answers. She testified that her trial testimony was accurate and truthful.
 {¶ 31} Officers William Lagasse and Aron Hanlon of the APD assisted in the execution of the search warrant of Appellant's house. Their testimony reiterated the list of items described by Det. Kreiger as being in the apartment.
 {¶ 32} John Ahern, a Wadsworth police officer, was involved in Appellant's arrest and testified to the following. Neither the car Appellant was in when he was arrested nor the hotel room where he was staying contained any meth manufacturing equipment. Appellant did, however, have marijuana on him and a thousand dollars hidden in a compartment on his belt.
 {¶ 33} After moving for the admission of several exhibits, the State rested its case and Appellant made a Crim.R. 29 motion. The trial court overruled the motion. After resting his case without presenting any evidence or testimony, Appellant renewed his Crim.R. 29 motion and the trial court overruled the motion.
 {¶ 34} Appellant has argued that his convictions are against the manifest weight of the evidence and not supported by sufficient evidence. The State has argued that the jury was in the best position to weigh the evidence and the evidence supports Appellant's convictions. We agree.
 {¶ 35} In the case sub judice, the jury had the opportunity to view the witness' testimony and adjudge their credibility; therefore, we must give deference to the jurors' judgments. SeeState v. Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13. Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting Appellant of illegal assembly or possession of chemicals for the manufacture of drugs and aggravated drug possession. The fact that Appellant did not have meth or meth manufacturing items on his person at the time he was arrested does not mean that he did not possess those found in the Provens house or his house. A person may knowingly possess a substance or object through either actual or constructive possession. State v. Hilton, 9th Dist. No. 21624,2004-Ohio-1418, at ¶ 16.
 {¶ 36} The testimony at trial established that the Provens house, which was Appellant's parents' house, and Appellant's house contained the necessary items to manufacture meth. Testimony also showed that Appellant had recently been in both residences. Several law enforcement officers, testified that the houses were or had recently been meth labs. Moreover, there was uncontroverted testimony that Appellant manufactured meth and that Appellant was the possessor of the meth and meth manufacturing equipment.
 {¶ 37} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the trial court clearly lost its way when it found Appellant guilty of illegal assembly or possession of chemicals for the manufacture of drugs and aggravated drug possession. The record contained evidence from which the jury could have found that Appellant knowingly possessed, either actually or constructively, meth and the chemicals for the manufacture of meth. The jury was in the best position to evaluate the credibility of witnesses and give proper weight to their testimony. See State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Appellant's conviction was not against the manifest weight of the evidence simply because the jury chose to believe the testimony of the State's witnesses over insinuations that the items and drugs belonged to someone else, specifically Gillman. State v.Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Moreover, "in reaching its verdict, the jury is free to believe, all, part, or none of the testimony of each witness." Prince v.Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35, citing State v. Jackson (1993), 86 Ohio App.3d 29, 33. As the factfinder, the jury was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. SeeDeHass, supra.
 {¶ 38} Based on the foregoing, this Court cannot find that Appellant's convictions were against the manifest weight of the evidence. Furthermore, as previously stated, "a determination that [a] conviction is supported by the weight of the evidence [is] also * * * dispositive of the issue of sufficiency."Roberts, supra at 4. Accordingly, having found that Appellant's convictions were not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Thus, we find that the trial court did not err in denying Appellant's motion for acquittal. Appellant's first and second assignments of error are without merit.
 Assignment of Error Number Three
"WHETHER THE TRIAL COURT'S SENTENCE WAS CONTRARY TO LAW SINCE IT DID NOT TAKE INTO ACCOUNT FUNDAMENTAL SENTENCING PRINCIPLES, EXPRESS SENTENCING CRITERIA, OR MAKE FINDINGS PURSUANT TO [R.C. 2929.14]?"
 {¶ 39} In his third assignment of error, Appellant has argued that his sentence is contrary to law because the trial court failed to consider the proper sentencing criteria and make the appropriate findings. Specifically, Appellant has argued that the trial court failed to make the proper findings required to impose more than the minimum sentence.
 {¶ 40} When reviewing a sentence on appeal, an appellate court "may increase, reduce, or otherwise modify a sentence" or it may vacate the sentence and remand the matter for resentencing. R.C. 2953.08(G)(2). Pursuant to R.C. 2953.08(G)(2):
"The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
"(a) That the record does not support the sentencing court's findings under division (B) or (D) of [R.C. 2929.13] * * *;
"(b) That the sentence is otherwise contrary to law."
Clear and convincing evidence is:
`"[T]hat measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."' State v.Eppinger (2001), 91 Ohio St.3d 158, 164, quoting Cross v.Ledford (1954), 161 Ohio St. 469, 477.
 {¶ 41} Appellant has asserted that the trial court erred when it did not state the proper findings when it sentenced him beyond the minimum prison sentence for his conviction. The State has argued that Appellant failed to object at the trial court level and therefore has waived the issue for appellate review. We agree.
 {¶ 42} Our review of the sentencing hearing transcript reveals that Appellant did not object to the alleged lack of findings on the part of the trial court during the hearing. Failure to object to the sentencing procedure of the trial judge constitutes a forfeiture of the alleged error. State v. Riley,
9th Dist. No. 21852, 2004-Ohio-4880, at ¶ 32. As such, Appellant has failed to preserve this issue for appeal.
 {¶ 43} The State has also argued that regardless of Appellant's failure to object during the sentencing hearing, Appellant's third assignment of error still fails because the trial court did make the proper findings. We agree.
 {¶ 44} Appellant's two convictions for illegal assembly or possession of chemicals for the manufacture of drugs, one of his aggravated drug possession convictions, and his failure to comply conviction were felonies of the third degree. His second aggravated drug possession conviction was a felony of the fifth degree. As previously mentioned, he received a sentence of three years of incarceration for each of the third degree felonies and a sentence of nine months incarceration for the fifth degree felony.
 {¶ 45} Pursuant to R.C. 2929.14(A):
"[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender * * * and is not prohibited by [R.C. 2929.13(G)(1)] from imposing a prison term on the offender, the court shall impose a definite prison term that shall be one of the following:
"* * *
"(3) For a felony of the third degree, the prison term shall be one, two, three, four, or five years.
"* * *
"5) For a felony of the fifth degree, the prison term shall be six, seven, eight, nine, ten, eleven, or twelve months."
Pursuant to R.C. 2929.14(B):
"[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense * * * unless one or more of the following applies:
"(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term." R.C. 2929.14(B)(1). (Emphasis added).
 {¶ 46} Pursuant to R.C. 2929.14(B)(1), if a defendant has previously served a prison term the trial court need not impose the shortest prison sentence or make findings for why it declined to do so. See State v. Pruiett, 9th Dist. No. 21796,2004-Ohio-3256, at ¶ 28.
 {¶ 47} In the present case, the sentencing transcript shows that the trial court noted Appellant's prior criminal history and prior sentences of state incarceration. The trial court found that, based on Appellant's prior criminal history and the multiple counts, the seriousness of the offenses would be demeaned by sentencing Appellant to the minimum sentence allowed. Additionally, in its sentencing journal entry, the trial court found pursuant to R.C. 2929.12(B) that Appellant had previously been incarcerated, that he has a history of criminal convictions, that the minimum sentence would demean the seriousness of the offenses and would not adequately protect the public, that Appellant was not amenable to community control, and that prison is consistent with the purposes of R.C. 2929.11.
 {¶ 48} Having complied with the statutory requirements of R.C. 2929.14, this Court finds that regardless of his failure to object to the sentencing procedures in the trial court, Appellant has failed to demonstrate by clear and convincing evidence that the trial court acted contrary to law when it imposed sentences that exceeded the minimum prison term.
 {¶ 49} Appellant's third assignment of error is not well taken.
 III {¶ 50} Appellant's three assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Concurs.
Moore, J. Concurs in judgment only.
[1] It is undisputed that methamphetamine is a schedule II controlled substance.