DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Sean L. Tobey has appealed from his conviction in the Medina County Court of Common Pleas of trafficking in drugs. This Court affirms.
 I {¶ 2} On February 16, 2005, Defendant-Appellant Sean L. Tobey was indicted on one count of trafficking in drugs, in violation of R.C. 2925.03(A)(1)/(C)(1)(a), a felony of the fourth degree. Appellant was arraigned on April 18, 2005, and pled "not guilty" to the charge in the indictment. A jury trial commenced on August 29, 2005. On August 30, 2005, the jury found Appellant guilty of trafficking in drugs. On October 3, 2005, the trial court sentenced Appellant to one year in prison.
 {¶ 3} Appellant has timely appealed, asserting two assignments of error.
 II Assignment of Error Number One
"APPELLANT'S TRAFFICKING IN DRUGS CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHERE APPELLANT ESTABLISHED THE AFFIRMATIVE DEFENSE OF ENTRAPMENT BY A PREPONDERANCE OF THE EVIDENCE."
 {¶ 4} In his first assignment of error, Appellant has argued that his conviction for trafficking in drugs was against the manifest weight of the evidence. Specifically, Appellant has argued that he established the affirmative defense of entrapment by a preponderance of the evidence. We disagree.
 {¶ 5} In reviewing whether a conviction is against the manifest weight of the evidence, this Court must:
"[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 6} Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. State v. Thompkins (1997),78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the fact finder's resolution of the conflicting testimony. Id.
 {¶ 7} Appellant was convicted of trafficking in drugs, in violation of R.C. 2925.03(A)(1)/(C)(1)(a), a felony of the fourth degree. Pursuant to R.C. 2925.03(A)(1), "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance[.]" One acts knowingly when "regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). If the substance involved in a violation of R.C. 2925.03(A)(1) is "any compound, mixture, preparation, or substance included in schedule I or schedule II, with the exception of marihuana, cocaine, L.S.D., heroin, and hashish" then the offender is guilty of aggravated trafficking in drugs, a felony of the fourth degree.[1] R.C. 2925.03(C)(1).
 {¶ 8} Appellant put forth the affirmative defense of entrapment and the trial court instructed the jury as to the nature of the defense. Because the defense of entrapment necessarily admits commission of the offense, we turn our focus from that issue to whether Appellant established the defense of entrapment by a preponderance of the evidence. We begin our analysis with a discussion of the legal underpinnings of the affirmative defense of entrapment.
 {¶ 9} "To successfully assert the criminal defense of entrapment, the defendant must show, by a preponderance of the evidence, that the criminal design originated with government officials and such officials implanted the disposition to commit the alleged offense in the mind of an innocent person." State v.Charlton, 9th Dist. Nos. 02CA008048 02CA008049, 2003-Ohio-2631, at ¶ 22, reversed on other grounds,101 Ohio St.3d 206, 2004-Ohio-715, citing State v. Doran (1983),5 Ohio St.3d 187, paragraph one of the syllabus. "The primary consideration in any determination of entrapment is the defendant's predisposition to commit the crime." State v. Illus
(May 30, 1984), 9th Dist. No. 1289, at *1, quoting State v.Johnson (1982), 4 Ohio App.3d 308, 310.
 {¶ 10} The following factors, while not an exhaustive list, are relevant to the issue of predisposition for the purposes of entrapment:
"(1) the accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity." Charlton
at ¶ 22, quoting Doran, 5 Ohio St.3d at 192.
Further, "[e]ntrapment does not exist where the accused was predisposed to commit the offense and the police `merely afford * * * opportunities for the commission of the offense.'"State v. Esposito (Dec. 30, 1994), 9th Dist. No. 2337-M, at *4, quoting Sherman v. United States
(1985), 356 U.S. 369, 372.
 {¶ 11} When the defendant is ready and willing to break the law, the fact that a government agent provides what appears to be a favorable opportunity to do so is not entrapment as a matter of law. Charlton at ¶ 22, citing State v. Powers (June 29, 1994), 9th Dist. No. 2285-M. When determining whether entrapment has been proven, "a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." Illus at *1, quoting Johnson, 4 Ohio App.3d at 310.
 {¶ 12} The State presented the testimony of three witnesses. Stephanie Hartley, a paid, confidential informant for the Medina-Wayne County Drug Enforcement Agency ("Medway"), testified that she first contacted Medway at the urging of her sister's father-in-law, a Wadsworth police officer. Hartley testified that he suggested that Medway might be a good way to get her foot in the door of the law enforcement profession. Hartley testified that she told Medway agents that she knew of people who sold drugs, one of those being Appellant. Hartley testified that she had not bought drugs from Appellant prior to working for Medway, but that she had observed him selling drugs while they worked together at the Country Café.
 {¶ 13} Hartley testified that she had seen Appellant sell marijuana, but never methamphetamine. Hartley testified that she knew Appellant sold methamphetamine because a co-worker at the Country Café "said that they get it off of him." Hartley testified that she initially contacted Appellant in an unrecorded phone call during which she inquired whether Appellant was in possession of any methamphetamine he was willing to sell. Hartley testified that Appellant stated that he had fifty dollars worth left. Hartley testified she took that to mean that he had sold however much else he had. Hartley testified that she and Appellant had an understanding prior to her making the recorded phone during which they set up the buy. Hartley testified that she gave Appellant the money and Appellant gave her the methamphetamine. Hartley testified that Appellant provided the methamphetamine that she bought.
 {¶ 14} On cross examination, Hartley testified that she had some familiarity with drugs prior to her employment with Medway. Hartley testified that the controlled buy with Appellant was her first and only time operating with Medway. Hartley denied that she and Appellant partied together during June, July and August of 2004. Hartley testified that she did not consider Appellant to be a friend. Hartley testified that she could not specifically name one date or time she had witnessed Appellant sell drugs. Hartley testified that she had used drugs while she was in high school. She testified that she was not using drugs while working at the Country Café and specifically denied ever using drugs with Appellant.
 {¶ 15} On redirect examination, Hartley testified that she could not remember specific dates and times of Appellant's drug sales because she was not writing the information down as it happened and that she had a bad memory. Hartley testified that Appellant generally conducted his drug transactions in the back of the Country Café.
 {¶ 16} Charles Ellis, a senior agent for Medway, testified that Hartley approached them to work as a confidential informant and provided them with information regarding purchasing drugs from Appellant. Agent Ellis testified that Hartley was paid fifty dollars cash on a per buy basis.
 {¶ 17} Michael Polen, an agent for Medway, testified that Hartley was a paid, confidential informant. Agent Polen testified that it was standard procedure for Medway to employ confidential informants and that confidential informants are usually involved in controlled buys. Agent Polen testified that Hartley was searched before and after the transaction. Agent Polen testified that Hartley claimed Appellant would only deal with her because they knew each other. Agent Polen testified that Appellant provided the drugs he sold to Hartley.
 {¶ 18} On cross examination, Agent Polen testified that Hartley had made an unrecorded phone call to Appellant outside of his presence.
 {¶ 19} Appellant testified in his own defense. He testified that he met Hartley when they both worked at the Country Café. Appellant testified that he and Hartley dated, at her initiation, for approximately three months in 2004. Appellant testified that he cared for Hartley. Appellant testified that he discovered Hartley had spent the night with his friend, Jim. Appellant testified that although he had intended on breaking up with her anyway, this incident confirmed his decision to end the relationship. Appellant testified that he never sold Hartley drugs prior to the controlled purchase. Appellant denied being a drug dealer.
 {¶ 20} Appellant testified that Hartley turned him on to drugs during their relationship and that methamphetamine was her drug of choice. Appellant testified that he and Hartley partied three to four nights per week. Appellant testified that Hartley asked him to sell her the methamphetamine. Appellant testified that she called him and asked him to do her a favor. Appellant testified that the phone call was unrecorded. Appellant testified that during that conversation, Hartley stated "I still love you. Do it for me." Appellant testified that but for Hartley's involvement and protestations of affection, he would never have sold methamphetamine to her. Appellant testified that he wanted to put "closure" to the relationship and demonstrate to Hartley that they could still be friends. Appellant testified that he had never sold drugs prior to, or subsequent to, the controlled buy.
 {¶ 21} On cross examination, Appellant testified that he had a romantic relationship with Hartley and that they cared for each other. Appellant testified that Hartley offered him cocaine at some point in time and eventually he tried it. Appellant could not testify as to the first time he tried cocaine. Appellant testified that Hartley bought the cocaine and methamphetamine and provided it to him. Appellant testified that at the time of the transaction, he possessed drugs that he was willing to sell to Hartley. Appellant testified that drug deals work by one person approaching the dealer and requesting to purchase the drug, be it a one time deal or not. Appellant testified that he has approached people to buy drugs and that his doing so did not entrap them.
 {¶ 22} Appellant testified that Hartley had only contacted him this one time in an effort to purchase methamphetamine. Appellant testified that at first he objected. Appellant testified that he exercised poor judgment in giving in to Hartley's request. Appellant testified that Hartley coerced him into selling her the methamphetamine based on their relationship and his feelings towards her. Appellant testified that selling Hartley methamphetamine was an opportunity to see her again. Appellant testified that he willingly went to the Country Café to sell Hartley drugs. Appellant conceded that he could have taken a different course of action to provide closure to the relationship, but instead he decided to sell Hartley methamphetamine.
 {¶ 23} Appellant testified that he could not simply give Hartley the methamphetamine because it was his personal stash and that he had to cover his cost. Appellant testified that he has given or shared drugs with people in the past
 {¶ 24} On redirect examination, Appellant testified that he believed there was a correlation between his break up with Hartley and her working with Medway to initiate a controlled buy from him. Appellant testified that he was surprised by Hartley's testimony indicating that they did not have a relationship and that she did not have feelings for him.
 {¶ 25} Based upon our review of the record, this Court cannot conclude that jury clearly lost its way and created a manifest miscarriage of justice when it found Appellant guilty of trafficking in drugs. See Otten, 33 Ohio App.3d at 340. It is clear from the record that Medway merely afforded Appellant an opportunity to commit the offense. Charlton at ¶ 22. Based on the testimony, we conclude that Appellant failed to establish that he was entrapped by a preponderance of the evidence. Appellant has failed to establish that he was induced by Hartley to sell him drugs against his will.
 {¶ 26} We are aware that Appellant's assertion of the affirmative defense of entrapment hinges on his testimony regarding his relationship with Hartley, her history of drug use, and what was said in the unrecorded phone conversation. However, we note that Hartley's testimony directly contradicted Appellant's with regard to all three of those important points. Thus, there exists an issue of credibility.
 {¶ 27} This Court will not overturn a conviction because the jury chose to believe the testimony offered by the prosecution. See State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at *2. We have held that, "in reaching its verdict, the jury is free to believe, all, part, or none of the testimony of each witness." Prince v. Jordan, 9th Dist. No. 04CA008423,2004-Ohio-7184, at ¶ 35, citing State v. Jackson (1993),86 Ohio App.3d 29, 33. As the finder of fact, the jury was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Thus, this Court will defer to the factfinder's judgment on matters of credibility. State v.Young, 9th Dist. No. 22636, 2006-Ohio-68, at ¶ 35, citing Statev. Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at *6.
 {¶ 28} This Court is mindful of Appellant's testimony that he willingly agreed to sell Hartley drugs in an effort to see her again. This was not inducement on Hartley's behalf. Appellant's conduct was a conscious decision by a person in possession of drugs to sell those drugs to another, albeit potentially for reasons other than making money. However, R.C. 2925.03(A)(1) does not take into account the reasons for selling the drugs, only that the drugs were sold. We are also mindful of Appellant's testimony that Hartley's sole contact with him concerning the purchase of methamphetamine consisted of two phone calls in which he agreed to sell to her and set up the time and place of the buy. Further, with the exception of Appellant's testimony, nowhere in the record is there any indication that he resisted in any fashion or that Appellant was overcome by Hartley's persistent requests to sell her methamphetamine. Such testimony is illustrative of Appellant's willingness to the sell the drugs and his ready acquiescence to the inducement. Further, we note that despite his generosity to Hartley in the past and his professed feelings of affection towards her, Appellant accepted the cash to cover his costs. We also note Appellant's testimony that he has participated in drug transactions in the past, although by his testimony, only as a buyer. We also note Appellant's testimony that he had ready access to the methamphetamine.
 {¶ 29} Accordingly, this Court finds that Appellant satisfies four of the five suggested criteria for predisposition enumerated in Doran: previous involvement in drug transactions, ready acquiescence, ready access to contraband, and willingness to involve himself in criminal activity. Therefore, this Court, sitting as the thirteenth juror, cannot disagree with the jury's resolution of the conflicting testimony and its determination that Appellant was not entrapped. See Thompkins,78 Ohio St.3d at 387.
 {¶ 30} We are reminded of well-established maxim discussed above. "To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." Illus at *1, quotingJohnson, 4 Ohio App.3d at 310. An unwary innocent would not have drugs to sell. An unwary criminal would. An unwary innocent would not set up a drug buy after one phone call, be it a favor for a friend or not. An unwary criminal would. An unwary innocent would not accept fifty dollars in exchange for illicit drugs during a clandestine meeting in a darkened parking lot. An unwary criminal would.
 {¶ 31} Appellant's first assignment of error lacks merit.
 Assignment of Error Number Two
"THE TRIAL COURT ERRED IN SENTENCING DEFENDANT TO MORE THAN THE MINIMUM PRISON TERM, WHERE HE HAD NOT PREVIOUSLY SERVED A PRISON TERM AND WHERE THE SENTENCING GUIDELINES MITIGATED AGAINST SUCH A PRISON SENTENCE."
 {¶ 32} In his second assignment of error, Appellant has argued the trial court erred in sentencing him to more than the minimum prison term. Specifically, Appellant has argued that Appellant had not previously served a prison term, and that the seriousness and recidivism factors did not support the trial court's determination that the shortest sentence would demean the seriousness of the offense and not adequately protect the community from future crime. We disagree.
 {¶ 33} State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856
changed an appellate court's standard of review for sentencing appeals. The Foster Court "concluded that trial courts have full discretion to impose a prison sentence within the statutory range" and "vest[ed] sentencing judges with full discretion" in sentencing. Foster at ¶ 100. Accordingly, post Foster, an appellate court reviews felony sentencing for an abuse of discretion. State v. Windham, 9th Dist. No. 05CA0033,2006-Ohio-1544, at ¶ 11-12. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 34} Initially, we note that Appellant has argued that under R.C. 2929.14(B) there is a presumption that a defendant who has not previously served a prison sentence will receive the shortest prison term allowed under R.C. 2929.14(A). Appellant's argument is legally incorrect. Foster declared R.C. 2929.14(B) unconstitutional and excised it. Foster at paragraph one of the syllabus. Accordingly, the presumption no longer exists.
 {¶ 35} We have reviewed the record and cannot say that the trial court abused its discretion in sentencing Appellant. Appellant was convicted of a fourth degree felony. Pursuant to R.C. 2929.14(A)(4), a conviction for a fourth degree felony can result in a prison term of six to eighteen months. Appellant was sentenced to one year in prison and thus, it is clear that his sentence fell within the statutory range.
 {¶ 36} Furthermore, the record indicates that the trial court considered all of the aspects of the general guidance statutes. In its October 5, 2005 journal entry, the trial court specifically stated that it had considered R.C. 2929.11 and R.C.2929.12. The trial court also stated that it considered the record and oral statements, when making its decision. Moreover, during the sentencing hearing the trial court stated that it had determined that the shortest prison term would demean the seriousness of the offense and not adequately protect the public. Appellant has argued that the trial court did not state on the record that any of the seriousness or recidivism factors of R.C.2929.12 justified its greater than minimum sentence. However,Foster also eliminated the requirement that trial courts state their reasons for imposing greater than minimum sentences on the record. Foster at paragraph seven of the syllabus.
 {¶ 37} Based on the transcript of the sentencing hearing and the subsequent judgment entry, this Court cannot find that the trial court acted unreasonably, arbitrarily, or unconscionably in its sentencing Appellant. As previously discussed, Appellant's sentence was within the statutory range for a felony of the fourth degree. Moreover, post Foster, it is axiomatic that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id.
 {¶ 38} Accordingly, Appellant's second assignment of error lacks merit.
 III {¶ 39} Appellant's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Carr, J. Boyle, J. Concur.
[1] Except as otherwise provided in division (C)(1)(b), (c), (d), (e), or (f) of R.C. 2925.03.