DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Rejeanna Jones, appeals from her convictions in the Summit County Court of Common Pleas. We affirm.
 I. {¶ 2} On September 17, 2005, Appellant and Cleottis Gilcreast ("Gilcreast") were at Appellant's home. Both were drinking and doing drugs. Prior to this incident, Appellant and Gilcreast, who has been diagnosed with a mental disability, had lived together for over a year and a half, but were separated on September 17, 2005. On the day in question, Gilcreast lost consciousness on at least three occasions. The first time Gilcreast lost consciousness was during the day. When he woke, he saw Appellant dancing. The second time he lost consciousness, Gilcreast awoke to find Appellant holding a bat. The third time, he woke to discover he was injured. He then determined he needed to get out of the house.
 {¶ 3} When Gilcreast left Appellant's home, he was naked. He went across the street where he entered a neighbor's home. He was bleeding and had suffered injuries to his mouth and had knots on his head. The neighbor called 911 to report that a naked man had entered her home. When police arrived, Gilcreast informed them that Appellant had beaten him with a bat. After talking with Gilcreast, police went to Appellant's house and knocked on the door for approximately ten minutes before Appellant's friend, Robin Williams ("Williams") allowed them to enter. Upon their entrance, police observed Appellant running from the dining room to the kitchen. The house was in disarray with several things turned over. Police also observed a padded table with an aluminum bat lying on it, some blood droplets, and a wet dining room floor. Police further noted that Appellant had blood stains on her clothing. She was uncooperative with their investigation.
 {¶ 4} When questioned, Appellant denied that anything had happened in the home that evening. An examination of the home indicated that someone had attempted to clean up. Police observed a pile of trash that had been swept into a central location and that the area smelled of disinfectant. Police found blood in the home, particularly in the kitchen and living room areas, but no blood was found on the bat. Appellant stated that Gilcreast had attacked her and punched her in the face, but police noted that she had no recent injuries.
 {¶ 5} On September 29, 2005, Appellant was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(1)/(A)(2) and one count of tampering with the evidence, in violation of R.C. 2921.12(A)(1). A supplemental indictment, filed on January 17, 2006 further charged Appellant with one count of felonious assault in violation of R.C. 2903.11(A)(1). Appellant pled not guilty and a jury trial commenced on April 10, 2006. At the close of the State's case and at the close of all evidence, Appellant unsuccessfully moved for a Crim. R. 29(A) motion for acquittal. The jury found Appellant guilty of one count of tampering with evidence and not guilty of felonious assault as contained in the original indictment. Appellant was further found not guilty of the felonious assault charge contained in the supplemental indictment, but was found guilty of the lesser included offense of assault. Appellant was sentenced to six months incarceration for the misdemeanor assault conviction and one year of incarceration for the tampering with evidence conviction to be served concurrently. Appellant filed a timely notice of appeal, raising two assignments of error for our review.
 III. ASSIGNMENT OF ERROR I "THE CONVICTION AND SENTENCE FOR FELONIOUS ASSAULT ARE INVALID BECAUSE THE RECORD SHOWS THAT THE JURY CONVICTED [APPELLANT] OF MISDEMEANOR ASSAULT AND NOT GUILTY OF FELONIOUS ASSAULT."
 {¶ 6} In her first assignment of error, Appellant contends that her conviction and sentence for felonious assault are invalid because the record shows that the jury convicted her of misdemeanor assault and found her not guilty of felonious assault. The trial court's sentencing entry, filed April 27, 2006, states in pertinent part: "said Jury came again into the Court and returned their verdict in writing finding [Appellant] * * * GUILTY of the crime of FELONIOUS ASSAULT, as contained in Count 3 of the Supplement One of the indictment[.]" The entry further states: "for a definite term of 6 months * * * for punishment of the crime of FELONIOUS ASSAULT, Ohio Revised Code Section 2903.11(A)(1)[.]"
 {¶ 7} After Appellant filed this appeal, the trial court issued a nunc pro tunc entry on August 28, 2006, at the request of the State, identifying the offense as assault.
 {¶ 8} According to Crim. R. 36, "[clerical mistakes in judgments * * * may be corrected by the court at any time." The appropriate remedy of such a mistake is
 "'generally a nunc pro tunc entry. The term `clerical mistake' refers to a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment. Furthermore, while courts possess authority to correct errors in judgment entries so that the record speaks the truth, nunc pro tunc entries are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided or what the court intended to decide.'" (Internal citations omitted.) State v. Williams, 6th Dist. No. L-02-1394, 2004-Ohio-466, at ¶ 7, quoting State v. Rowland, 3d Dist. No. 5-01-39, 2002-Ohio-1421, at ¶ 10-11.
 {¶ 9} At Appellant's sentencing hearing, the trial court stated "[a]nd also as a result of the conviction in the tampering with evidence, and an assault charge, you're found guilty of the community control violation[.]" Further, the trial court later stated, "[y]ou had the opportunity to go to trial; you were not found guilty of felonious assault[.]" Lastly, the trial court sentenced Appellant to "[s]ix months on the assault to run concurrent." From this, it is clear that the trial court knew that the jury found Appellant guilty of assault rather than guilty of felonious assault and that its judgment entry, filed on April 27, 2006, contained a clerical mistake which the trial court has now corrected. Therefore, we find that Appellant's first assignment of error is moot.
 ASSIGNMENT OF ERROR II "THE PROSECUTION FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUPPORT THE ELEMENTS OF TAMPERING WITH EVIDENCE AND THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE DEFENDANT DID NOT ACT WITH PURPOSE TO COMMIT THE CRIME."
 {¶ 10} In her second assignment of error, Appellant contends that the State failed to produce sufficient evidence to support the elements of tampering with evidence and that the jury verdict is against the manifest weight of the evidence. We disagree.
 {¶ 11} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *4, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390. Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *5.
Therefore, we will address Appellant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of Appellant's claim of insufficiency.
 {¶ 12} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 13} Under R.C. 2921.12(A)(1),
 "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"
Appellant contends the record does not show purposeful conduct to impair the value of any evidence found at the scene. We do not agree.
 {¶ 14} R.C. 2901.22(A) states that "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 15} To determine if the purposeful elements exist, "[a] defendant's state of mind may be inferred from the totality of the surrounding circumstances" State v. Harper (Mar. 29, 2000), 9th Dist. No. 19632, at *2. The surrounding facts and circumstances were presented by the State through the testimony of Akron Police Officer Steve Swartz ("Officer Swartz") and Detectives Clarence Dorsey ("Detective Dorsey"), and Pat McMillan ("Detective McMillan").
 {¶ 16} Officer Swartz testified to the following: When he arrived on the scene, he saw Gilcreast run out of a house towards them. Officer Swartz and his partner exited their vehicle and heard Gilcreast state that Appellant had beat him up. Due to this statement, the officers approached Appellant's house. As they approached her house, Officer Swartz's partner looked into the front window and saw Appellant inside. He pleaded with her to open the door, but she refused to do so. Appellant eventually came to the window, and the officers attempted to persuade her to allow them to enter. Approximately ten minutes after the officers approached the home and knocked on the door, Williams opened the door. Officer Swartz testified that as he entered the home, he saw Appellant run to the back of the house. According to Officer Swartz, the home was in disarray with many things turned over. He further stated that there was a bat on a table, some blood drops scattered around, and the floor was soaking wet in the dining room. Officer Swartz testified that Appellant was very uncooperative and she had on pajamas with blood stains on them. Further, Officer Swartz testified that there was a trash can with blood spots on it and "in the kitchen and dining room area, looks like somebody was trying to frantically clean something up, like a little pile of something that was just swept up and somebody ran a mop over the floor." When asked about the items he saw that indicated that Appellant had been cleaning up, Officer Swartz testified that there was a broom and a bucket of detergent and that "[i]t was total chaos and then total neatness would stick out to me like something that was being swept up." Officer Swartz testified that it "was kind of obvious to me that a fight just broke out and all of a sudden somebody's cleaning up" while the police were waiting outside to enter. Further, Officer Swartz testified that Appellant was vague and would not answer questions. Officer Swartz also testified that the normal response to a knock on the door by the police is to open the door.
 {¶ 17} Detective Dorsey testified that he is a detective with the crime scene unit of the Akron City Police Department. He testified that on the night of September 17, 2005, it was part of his duty to "collect evidence, take photos and submit evidence to BCI to get it tested." According to Detective Dorsey, it is up to the case detective to determine what evidence gets sent and tested at BCI (Bureau of Criminal Identification and Investigation). He further stated that the bat found at the scene was not tested at BCI. Detective Dorsey testified that the house was "somewhat ransacked" and in disarray. He testified that there were blood drops on the floor and around the TV shelving unit. Further, Detective Dorsey testified that a photograph he had taken showed that "someone was trying to clean up the house before we got there, very neat. The floor was wet." Detective Dorsey also stated that the water used to clean up the kitchen had leaked into the basement, "you see this pinkish liquid found so we believe it's [sic] water diluted with blood which leaked from the kitchen on down to the basement area there and the whole basement was wet there. Ceiling was wet, basement floor was wet."
 {¶ 18} Detective McMillan testified that he works in the major crimes unit of the Akron City Police Department. He testified that he was the case investigator on September 17, 2005, and in that capacity, he directed the crime scene unit as to the evidence he thought was necessary to be recovered or photographed. Detective McMillan stated that as he walked through Appellant's home the first thing that caught his attention was an aluminum bat located on top of a massage table. As he continued through the home, he saw "in the dining room a swept up pile of broken glass and debris. The floor was wet. There was some blood." He further testified that it appeared as if someone had cleaned up the area. He saw water in the basement, directly underneath the dining room, that appeared to come through the floor. He stated that the water in the basement was not clear. Detective McMillan stated that he requested that the crime scene unit check the aluminum baseball bat to determine if there was blood on it. After it was checked, the crime scene unit informed him there was no blood found on the bat. Further, when asked about Appellant's demeanor, Detective McMillan stated that it was not his impression that Appellant was drunk. "In fact, I asked her if she was intoxicated and she said no. She complained of smelling of alcohol." Detective McMillan also stated that despite the fact that no blood was found on the bat, he was "satisfied that the bat was used" in the altercation. He testified that it was possible that the reason no blood was found on the bat was because it was cleaned up after it was used. Finally, Detective McMillan testified that "[b]ased on my experience, * * * when someone is doing the things [Appellant] did, it is to conceal or destroy or alter evidence that would further our investigation."
 {¶ 19} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the jury clearly lost its way when it found Appellant guilty of tampering with evidence. The record contained evidence from which the jury could have found that Appellant purposely impaired the value of evidence, knowing that a criminal investigation was likely to take place. The jury was in the best position to evaluate the credibility of witnesses and give proper weight to their testimony. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 20} "This Court will not overturn a conviction because the jury chose to believe the testimony offered by the prosecution." State v.Tobey, 9th Dist. No. 05CA0103-M, 2006-Ohio-5069, at ¶ 27. We have held that, "in reaching its verdict, the jury is free to believe, all, part, or none of the testimony of each witness." Prince v. Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35, citing State v. Jackson (1993),86 Ohio App.3d 29, 33. Thus, this Court will defer to the factfinder's judgment on matters of credibility. State v. Young, 9th Dist. No. 22636,2006-Ohio-68, at ¶ 35, citing State v. Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at *6.
 {¶ 21} Here, the testimony showed that Appellant knew police were standing outside her home, knocking at her door. Further, the testimony showed that Appellant did not allow police to enter her home for approximately ten minutes, after which she was uncooperative. According to the testimony presented, the officers and detectives who viewed the scene all stated that the home was in disarray, and it appeared that Appellant had cleaned up portions of the mess.
 {¶ 22} Further, we find no merit in Appellant's argument that due to Appellant's voluntary intoxication she could not have acted purposefully.
 "'While voluntary intoxication is not generally a defense to any crime, evidence of intoxication is admissible for the purpose of showing that the defendant was not capable of forming a specific intent to commit the crime with which he is charged, if such intent is an element of the offense.'" State v. Paletta (Oct. 31, 2001), 9th Dist. No. 00CA007717, at *7, quoting State v. Wolons (1989), 44 Ohio St.3d 64, 68.
 {¶ 23} At trial, evidence was presented that both Appellant and Gilcreast were drinking and using cocaine throughout the day. Detective Dorsey testified that he thought she was intoxicated, and that he could smell liquor on her. He further stated that the smell could have been from her clothing. Detective McMillan testified that when asked if she was intoxicated, Appellant stated that she was not intoxicated. According to Detective McMillan, Appellant admitted that she smelled of alcohol. At most, the testimony showed that Appellant had been drinking and doing cocaine at some point before the incident occurred. However,
 "purpose is the culpable mental state at issue here-and intoxication, even severe intoxication, can co-exist with purpose. The issue of intoxication is not raised as a defense to the element of purpose in a criminal prosecution merely because the evidence suggests reduced inhibitions, impaired judgment or blurred appreciation by the defendant of the consequences of his conduct." (Emphasis sic.) State v. Hicks (1989), 43 Ohio St.3d 72, 74.
 {¶ 24} Further, as the finder of fact, the jury was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. See DeHass, 10 Ohio St.2d at paragraph one of the syllabus. Upon review of the record, we cannot conclude that the jury created a manifest miscarriage of justice in finding that Appellant acted purposefully in tampering with the evidence.
 {¶ 25} Based on the foregoing, this Court cannot find that Appellant's conviction was against the manifest weight of the evidence. As this Court has disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of her challenge to its sufficiency on these claims. Roberts, supra, at *5.
 III. {¶ 26} Appellant's two assignments of errors are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARLA MOORE FOR THE COURT
BOYLE, J., BAIRD, J., CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)