[Cite as *State v. Anderson*, 2014-Ohio-1206.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.        26640 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVID M. ANDERSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.       CR 12 05 1469 |

DECISION AND JOURNAL ENTRY

Dated: March 26, 2014

CARR, Judge.

{¶1} Appellant David Anderson appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Anderson was indicted on one count of kidnapping in violation of R.C. 2905.01(A)(4), a felony of the first degree; and one count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree. Anderson pleaded not guilty at arraignment and the matter was tried before a jury. The jury found Anderson guilty of both counts. The trial court adjudicated Anderson a Tier III sex offender, and sentenced him to seven years in prison for kidnapping and to ten years for rape, running the terms consecutively. The trial court further ordered that Anderson shall have no contact with the victim. Anderson filed a timely appeal in which he raises nine assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY CONVICTING AND SENTENCING ANDERSON TO MULTIPLE COUNTS FOR RAPE AND KIDNAPPING AS THEY WERE ALLIED OFFENSES OF A SIMILAR IMPORT.

{¶3} Anderson argues that the trial court committed plain error by sentencing him on both kidnapping and rape because the two counts were allied offenses of similar import. This Court disagrees.

{¶4} A reviewing court reviews the trial court's determination whether to merge offenses pursuant to R.C. 2941.25 de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1.

{¶5} Ohio's allied offense statute provides as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25. Thus, two or more offenses arising from the same conduct and similar import only may result in one conviction. R.C. 2941.25(A). Two or more offenses may result in multiple convictions, however, if: (1) they are offenses of dissimilar import; (2) they are separately committed; or (3) the defendant possesses a separate animus as to each. R.C. 2941.25(B).

{¶6} "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *State v.*

*Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, syllabus. A plurality of the Ohio Supreme Court set forth a two-part test to analyze whether two offenses are allied offenses of similar import. First, one must determine whether the offenses at issue could be committed by the same conduct. *Id.* at ¶ 47. One does so by asking "whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other." (Emphasis sic.) *Id.* at ¶ 48. *See also id.* at ¶ 66 (O'Connor, J., concurring) (offenses are allied "when their elements align to such a degree that commission of one offense would probably result in the commission of the other offense."). Second, one must ask whether the offenses actually were committed by the same conduct, "i.e., 'a single act, committed with a single state of mind.'" *Johnson* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., dissenting). If the answer to both inquiries is yes, the offenses will merge. *Johnson* at ¶ 50.

{¶7} Anderson was convicted of kidnapping in violation of R.C. 2905.01(A)(4) which states: "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]" Anderson was further convicted of rape in violation of R.C. 2907.01(A)(2) which states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶8} The State concedes, and this Court agrees, that it is possible to commit rape and kidnapping with the same conduct. "Sexual activity" includes "sexual conduct." R.C. 2907.01(C). A perpetrator necessarily restrains the victim's liberty while compelling the victim to submit to sexual conduct. *See State v. Logan*, 60 Ohio St.2d 126, 130 (1979) ("[I]mplicit

within every forcible rape is a kidnapping.") Therefore, the crucial inquiry in this case is whether Anderson committed kidnapping and rape separately or with a separate animus so that the two offenses would not merge. *Johnson* at ¶ 51.

{¶9} The Ohio Supreme Court has held:

In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:

(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Logan*, 60 Ohio St.2d at syllabus.

{¶10} In this case, Anderson does not challenge the jury's finding that the State proved all elements of both rape and kidnapping at trial. The evidence demonstrated that Anderson stopped the victim as she was walking outside, offered her a ride to church, drove her instead to another location, and forced her to engage in fellatio and cunnilingus. Based on our review of the evidence of Anderson's conduct, this Court concludes that he committed the offenses of kidnapping and rape separately.

{¶11} The victim volunteered to cook lunch every Tuesday at her church as part of the church's community outreach program. To prepare the elaborate lunches, the cooks were required to arrive at the church around 8:00 a.m. When her friend failed to pick her up in the morning of May 15, 2012, the victim decided to make the 15-minute trek on foot. As she was walking, she noticed a car pass her and circle around several times to pass her again and again.

As she approached a car wash, she noticed the same car parked in the business' parking lot. Anderson was alone in the car. He called the victim over to his car and asked her if she would like a ride. The victim told him that she was going to Macedonia Baptist Church and she accepted his offer of a ride to church.

{¶12} Anderson began driving the victim in the direction of the church. As he reached the front of the church, he began to punch the victim repeatedly in the head and face. He then drove past the church, turned down a side street, and began driving away from the church. Until Anderson began punching her, the victim was unaware that he was not taking her to the church. Anderson threatened to shoot the victim, preventing her out of fear from rolling down her window to yell for help. After driving on several streets, Anderson quickly pulled into the driveway of an abandoned house which was located next door to another abandoned house. Anderson drove to the back of the house which was surrounded on three sides by heavy foliage, bushes, and trees. He then told her to get out of the car and get in the back seat or he would shoot her. She dared not attempt to run away out of fear of being shot and killed.

{¶13} Anderson joined the victim in the back seat where he again punched her repeatedly and strangled her until she began to black out. Despite her pleas that he "stop it," Anderson forced the victim to perform fellatio until he ejaculated in her mouth. He then forced the victim to remove one shoe and one leg from her pants, and forced her to submit to cunnilingus. The victim was able to escape after the police arrived on the scene after a neighbor heard her screams and called 911.

{¶14} This Court concludes that Anderson did not commit one single act of kidnapping merely incidental to his restraining the victim during sexual activity. Rather, his conduct indicated that he kidnapped the victim the moment she entered his car, deceiving her that he was

driving her to church. Anderson actually drove to the church, but bypassed it at the last moment before beginning to punch the victim in the face and threatening to shoot her. Moreover, he drove her to the back yard of an abandoned house next to another abandoned house where his car was secluded from view by heavy foliage, trees, and bushes which also reasonably muffled any sounds from his car. But for an attentive neighbor who was sitting on her porch across the street, and whose senses were heightened by the sight of an unfamiliar car pulling quickly into the driveway of a vacant house, Anderson's car would have been both visually and audibly secluded from attention. In addition, Anderson did not begin his sexual assault of the victim immediately upon parking his car behind the vacant house. Instead, he forced the victim out of the car and again into the car's back seat where he began to hit and strangle the victim to compel her to submit to sexual conduct. Based on this conduct, this Court concludes that Anderson committed the offenses of kidnapping and rape separately, or with a separate animus. The first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY SENTENCING ANDERSON TO CONSECUTIVE SENTENCES IN VIOLATION OF R.C. 2929.14(C).

## ASSIGNMENT OF ERROR III

ANDERSON WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO ARGUE THAT THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES WAS CONTRARY TO LAW.

{¶15} Anderson argues that the trial court erred by sentencing him to consecutive sentences without making the factual findings required by R.C. 2929.14(C)(4). This Court disagrees.

{¶16} R.C. 2929.14(C)(4) states:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶17} This Court recently discussed the requirement that the trial court make the statutory findings enunciated in R.C. 2929.14(C)(4) prior to imposing consecutive sentences. *State v. Brooks*, 9th Dist. Summit Nos. 26437, 26352, 2013-Ohio-2169. We recognized that, although the trial court need not explain its reasoning behind its findings, it must nevertheless make the requisite findings. *Id.* at ¶ 13. Moreover, we held that the trial court must make those findings "at the sentencing hearing on the record[,]" although it need not invoke "talismanic words." *Id.* at ¶ 12 and 13. It is sufficient that the findings are clear from a review of the record. *Id.* at ¶ 12.

{¶18} In this case, Anderson concedes that the trial court found that consecutive sentences were necessary to protect the public and to punish him. He argues, however, that the trial court failed to find that (1) consecutive sentences were not disproportionate to the seriousness of his conduct and to the danger he poses to the public, and (2) one of the factors in

R.C. 2929.14(C)(4)(a)/(b)/(c) applied. A careful reading of the trial court's comments during the sentencing hearing belies Anderson's arguments.

{¶19} At the sentencing hearing, the trial court found, based on the evidence adduced at trial, that "no single prison term could adequately reflect the seriousness of [Anderson's] conduct." Moreover, the trial court noted the "heinous nature of these offenses[,]" including the "significant mental * * * [and] physical harm" Anderson perpetrated on the victim. The trial court referred to the victim's letter which a representative read at the sentencing hearing in which the victim wrote that Anderson's acts against her have rendered her suicidal and "bottled up in fear." The court further referred to the photographs of the victim's injuries and remarked that all of Anderson's statements about the incidents constituted "lie after lie." Finally, the trial court expressly found that the kidnapping and rape were "two separate incidents," i.e., that they were committed as part of more than one course of conduct. Accordingly, based upon the record and considering these findings as a whole, this Court concludes that the trial court made the requisite findings that consecutive sentences were not disproportionate to the seriousness of Anderson's conduct, that the rape and kidnapping were committed as part of more than one course of conduct, and that a single prison term would not adequately reflect the seriousness of Anderson's conduct which resulted in great and unusual harm. Anderson's second assignment of error is overruled.

{¶20} Anderson argues that defense counsel was ineffective for failing to argue that the trial court's imposition of consecutive sentences was contrary to law. This Court uses a two-step process as set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), to determine whether a defendant's right to the effective assistance of counsel has been violated.

> First, the defendant must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*.

**{¶21}** Given our resolution of Anderson's second assignment of error, we conclude that trial counsel's performance was not deficient. Anderson's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT FAILED TO PROPERLY NOTIFY ANDERSON OF HIS OBLIGATIONS TO REGISTER AS A SEX OFFENDER AT HIS SENTENCING HEARING.

## ASSIGNMENT OF ERROR V

ANDERSON WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO OBJECT AT HIS SENTENCING HEARING THAT THE TRIAL COURT FAILED TO PROPERLY NOTIFY HIM OF HIS OBLIGATIONS TO REGISTER AS A SEX OFFENDER.

**{¶22}** Anderson argues that this Court must reverse and remand for a new sentencing hearing because the trial court failed to properly explain his sex offender registration duties or ensure that Anderson read the form explaining his registration duties. This Court disagrees.

**{¶23}** R.C. 2950.03(A)(2) requires a judge to provide notice to the offender of his duty to register. Anderson argues that the trial court failed to comply with R.C. 2950.03(B)(1)(a), which states:

If the notice is provided to an offender under division (A)(1) or (2) of this section, * * * the judge shall require the offender to read and sign a form stating that the offender's duties to register, to file a notice of intent to reside, if applicable, to register a new residence address or new school, institution of higher education, or place of employment address, and to periodically verify those addresses, and the offender's duties in other states as described in division (A) of this section have been explained to the offender. If the offender is unable to read, * * * the judge shall certify on the form that the * * * judge specifically informed the offender of those duties and that the offender indicated an understanding of those duties.

{¶24} To the extent that Anderson argues that the trial court judge erred by failing to explain his registration duties, this Court disagrees. The statute requires the judge to "specifically inform[] the offender of those duties" under circumstances where the offender is unable to read the recitation of duties himself on the applicable form. Anderson has not alleged that he was unable to read at the time of the sentencing hearing. Moreover, he does not dispute that the trial court provided him with the relevant form that delineated his registration duties. In addition, he admits that he signed that form.

{¶25} At the sentencing hearing, the trial court informed Anderson that he was a Tier III sex offender and that, upon release from prison, he would be required to "register for life with in-person verification every 90 days." The judge then gave the form that delineated Anderson's registration duties to his attorney so that Anderson could complete it. Again, he does not dispute that he signed the form. Under these circumstances where Anderson was represented by counsel, and the trial court summarized his registration duties and provided the applicable form to defense counsel for completion by Anderson, we presume that defense counsel reviewed the form with Anderson.

{¶26} Finally, Anderson argues that the form he admits he signed, and which enunciated his registration duties, is a nullity because it was not filed with the clerk's office until after he filed his notice of appeal. Anderson cites no authority for the proposition that the form must be filed with the clerk, and we find none. Anderson's fourth assignment of error is overruled.

{¶27} Anderson further argues that trial counsel was ineffective for failing to object to the trial court's failure to notify him of his registration duties. Given our conclusion that the trial court did not fail to provide him with adequate notification, we conclude that defense counsel's performance was not deficient. Anderson's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN SENTENCING ANDERSON FOR KIDNAPPING AS A FELONY OF THE FIRST DEGREE, INSTEAD OF A FELONY OF THE SECOND DEGREE, BECAUSE THE JURY VERDICT DID NOT INCLUDE THE DEGREE OF THE OFFENSE, NOR ANY AGGRAVATING ELEMENTS AS REQUIRED UNDER R.C. 2945.75(A)(2) AND *STATE V. PELFREY*, 112 OHIO ST.3D 422, 2007-OHIO-256.

## ASSIGNMENT OF ERROR VII

ANDERSON WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO ARGUE THAT THE TRIAL COURT SHOULD HAVE SENTENCED ANDERSON ON HIS KIDNAPPING CONVICTION AS A FELONY OF THE SECOND DEGREE.

{¶28} Anderson argues that the trial court erred by sentencing him for kidnapping as a felony of the first degree pursuant to *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256. This Court disagrees.

{¶29} In *Pelfrey*, the Ohio Supreme Court held: "Pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." ¶ 14. *See also State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042 (reaffirming the analysis enunciated in *Pelfrey*). R.C. 2945.75(A)(2) states: "When the presence of one or more additional elements makes an offense one of more serious degree[,] [a] guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged." This Court concludes that R.C. 2945.75 and, therefore, *Pelfrey* are not implicated in this case.

**{¶30}** R.C. 2905.01(C)(1) classifies kidnapping as a felony of the first degree except where the offender "releases the victim in a safe place unharmed[.]" Under those circumstances, kidnapping is a felony of the second degree. *Id.* The Ohio Supreme Court has held that the statutory provision reducing the offense level of kidnapping "is not an element of the offense; rather, the accused must plead and prove it in the fashion of an affirmative defense." *State v. Sanders*, 92 Ohio St.3d 245, 265 (2001). Accordingly, no aggravating or additional element must be proved by the State to elevate kidnapping to a felony of the first degree. Instead, the defendant bears the burden of establishing the existence of a mitigating factor which might reduce the offense level. As neither R.C. 2945.75 nor *Pelfrey* is implicated under these circumstances, Anderson's sixth assignment of error is overruled.

**{¶31}** Anderson further argues that trial counsel was ineffective for failing to argue that the trial court should have sentenced him on the kidnapping charge as a felony of the second degree. Given our conclusion that the trial court did not err by sentencing Anderson for a felony of the first degree, we must conclude that trial counsel's performance was not deficient. Accordingly, Anderson's seventh assignment of error is overruled.

## ASSIGNMENT OF ERROR VIII

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT ORDERED ANDERSON HAVE "NO CONTACT" WITH THE PROSECUTING WITNESS.

## ASSIGNMENT OF ERROR IX

ANDERSON WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO ARGUE THAT THE TRIAL COURT'S ORDER OF HAVING "NO CONTACT" WITH THE PROSECUTING WITNESS WAS UNLAWFUL.

{¶32} Anderson argues that the trial court erred by ordering him to have no contact with the victim as part of his sentence. Although the State concedes error, this Court does not agree.

{¶33} Anderson relies on authority out of the Eighth District for the proposition that a trial court has no authority to impose a no contact order upon a criminal defendant who has been sentenced to prison. *See State v. Holly*, 8th Dist. Cuyahoga No. 95454, 2011-Ohio-2284, ¶ 21 ("While a 'no contact' order may be properly imposed as a sanction pursuant to R.C. 2929.25 when a trial court places a defendant on community controlled sanctions, we find no authority in Ohio sentencing law to allow for such a penalty when imposing a prison term * * *.") This Court is neither bound nor persuaded by the holding of our sister district.

{¶34} Arguably, R.C. 2929.13(A) provides that, "if the court is required to impose a mandatory prison term for the offense for which sentence is being imposed, * * * [it] may not impose any additional sanction or combination of sanctions under section 2929.16 or 2929.17 of the Revised Code." R.C. 2929.16 and R.C. 2929.17 enumerate various community control sanctions relevant to felons. Some appellate districts have recognized that no contact orders constitute community control sanctions. *See e.g., State v. Snyder*, 3d Dist. Seneca No. 13-12-38, 2013-Ohio-2046, ¶ 55; *State v. Miller*, 12th Dist. Butler No. CA2010-12-336, 2011-Ohio-3909, ¶ 21. However, nowhere do R.C. 2929.16 and R.C. 2929.17 expressly identify no contact orders as community control sanctions. While the imposition of a no contact order may under certain circumstances function as a community control sanction, there is nothing to indicate that it may only function as a community control sanction. Not unlike restitution which, pursuant to R.C. 2929.18, may be ordered whether or not the defendant has been sentenced to prison, a no contact order provides a means to attempt to restore the victim, even where that restoration manifests as peace of mind. While there is no statutory provision expressly authorizing the imposition of a no

contact order, this Court finds it significant that there is no provision prohibiting the imposition of such orders.

{¶35} Moreover, the imposition of a no contact order to shield the victim from future harassment, in conjunction with a prison sentence, is consistent with the legislative intent relative to sentencing. R.C. 2929.11(A) establishes two overriding purposes of felony sentencing: to protect the public and to punish the offender, both in consideration of avoiding any unnecessary burden on the state or local government resources. Unfortunately, mere imprisonment does not prevent a defendant from using various direct and indirect means to contact his victim to prolong the victim's suffering, but a no contact order puts the defendant, and the prison, on notice about the victim's wishes.

{¶36} A no contact order not only serves the interests of the victim, and meets one of the primary goals of sentencing, but it also gives effect to the Ohio Constitution's amendment to recognize the rights of crime victims. In 1994, the people voted to amend the Ohio Constitution to include a provision addressing the rights of victims of crimes. Article I, Section 10(a), Ohio Constitution provides, in pertinent part: "Victims of criminal offenses shall be accorded fairness, dignity, and respect in the criminal justice process, and, as the general assembly shall define and provide by law, shall be accorded rights to reasonable and appropriate notice, information, access, and protection and to a meaningful role in the criminal justice process." No contact orders, imposed in conjunction with sentences of imprisonment, serve the overriding purpose of protecting the public without imposing an unnecessary burden on government resources.

{¶37} The General Assembly and the Ohio Constitution have encouraged victims to participate in the criminal justice system. This allows judges to have a greater understanding of the harm caused by the defendant's crimes and gives a voice to the victims of crime. It would be

an odd, and unfortunate, result if the victim, after being invited into the courtroom to participate in the process, could not be protected from the defendant after he leaves the courtroom and enters prison.

{¶38} There are already mechanisms in place which require the prison system to protect victims. *See* State of Ohio Department of Rehabilitation and Correction Policy No. 03-OVS—1, eff. June 24, 2013, VI(A)(4)(a) (providing that a victim may request in writing a cease and desist order from the institution, directing the inmate to stop unwanted or inappropriate contact). In addition, penal institutions themselves may establish rules prohibiting inmates from having contact with victims. OAC 5120-9-06, 5120-9-07, and 5120-9-08 establish inmate rules of conduct and prescribe dispositions for rule violations. OAC 5120-9-06(C) enumerates sixty-one types of rules violations, including "[a]ny violation of any published institutional rules, regulations or procedures." (C)(61). Although the onus is placed on the victim to initiate such mechanisms by notifying the institution and filing a written request, the Department of Rehabilitation and Correction has developed a policy to address these requests. Accordingly, a court-issued no contact order, i.e., a writing evidencing the victim's wishes expressed in court in person or through an advocate, would place no greater burden on the institution or any government resources.

{¶39} This Court concludes that a trial court may impose a no contact order as part of its sentence. Anderson has not argued, and thus we need not review, whether the terms of the no contact order in this case are appropriate. We recognize that there may be other cases where a no contact order could be troublesome. For example, if a trial court ordered no contact between the defendant and his child, the defendant may have other constitutional arguments that do not apply here. Because we are not presented with that argument in this case, we need not address it.

{¶40} Based on the above discussion, this Court concludes that there is no prohibition against a trial court's issuance of a no contact order in conjunction with the imposition of a prison sentence. Accordingly, the trial court did not err by ordering no contact between Anderson and the victim notwithstanding his prison sentence. Anderson's eighth assignment of error is overruled.

{¶41} Anderson argues in his final assignment of error that trial counsel was ineffective for failing to object to the imposition of the no contact order in conjunction with a term of imprisonment. Based on our resolution of Anderson's eighth assignment of error, this Court concludes that trial counsel's performance was not deficient. Anderson's ninth assignment of error is overruled.

III.

{¶42} Anderson's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

WHITMORE, J.
CONCURS.

BELFANCE, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶43} I concur in the majority's judgment with respect to Mr. Anderson's first assignment of error as I agree that the offenses should not have merged for purposes of sentencing because they were separately committed. *See State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 51 ("[I]f the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge."). (Emphasis deleted.) I also concur with the majority's resolution of Mr. Anderson's fourth, fifth, sixth, and seventh assignments of error. However, I respectfully dissent from the majority's resolution of Mr. Anderson's second, third, eighth, and ninth assignments of error.

{¶44} Mr. Anderson asserts in his second assignment of error that the trial court failed to make the findings required by R.C. 2929.14(C)(4). Because I cannot conclude that the trial court made one of the required findings, I agree. While it is true that the trial court is not required to use the precise words in the statute in making its findings, it still must be clear from the

transcript of the sentencing hearing that the trial court made all the required findings. *See State v. Brooks,* 9th Dist. Summit Nos. 26437, 26352, 2013-Ohio-2169, ¶ 12-13. From the sentencing hearing, I cannot conclude that the trial court found anything that would comport with the finding that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" R.C. 2929.14(C)(4). While the finding in R.C. 2929.14(C)(4)(b), which I agree was made by the trial court, references the seriousness of the offender's conduct, there is nothing in the record which speaks to whether consecutive sentences would be disproportionate to the danger Mr. Anderson poses to the public as required by the statute. Accordingly, I would sustain Mr. Anderson's second assignment of error and remand the matter to the trial court for further proceedings.

{¶45} Because I would sustain Mr. Anderson's second assignment of error, I would decline to address Mr. Anderson's third assignment of error as it would have been rendered moot. *See* App.R. 12(A)(1)(c).

{¶46} Mr. Anderson argues in his eighth assignment of error that the trial court erred when it ordered him to have no contact with the victim as part of his sentence. In my view, if the no-contact order was ever a permissible sanction in the felony sentencing scheme, it would be via R.C. 2929.17. However, upon close examination of the applicable statutes, I would conclude that the trial court could not impose this sanction while Mr. Anderson was in prison and, thus, lacked authority to include that as part of Mr. Anderson's sentence.

{¶47} "Judges have no inherent power to create sentences. Rather, judges are duty-bound to apply sentencing laws as they are written. [T]he only sentence which a trial court may impose is that provided for by statute." (Internal quotations and citations omitted.) *State v. Fischer,* 128 Ohio St.3d 92, 2010-Ohio-6238, ¶ 22. Thus, I question the majority's premise that

the trial court possesses authority to impose a no-contact order, simply because there is no provision expressly preventing the imposition of this sanction. In essence, that analytical pathway would open the door to sentencing based upon the legislature's silence. However, this Court has previously concluded, on more than one occasion, that penalties that are not authorized by any statute are impermissible. *See State v. Mose,* 9th Dist. Medina No. 11CA0083-M, 2013-Ohio-635, ¶ 15 (concluding banishment is not authorized under R.C. 2929.21 as a permissible penalty); *State v. Creel,* 9th Dist. Summit No. 26334, 2012-Ohio-3550, ¶ 6 (concluding there was no statutory authority authorizing trial court to order defendant to spend each Christmas Eve he spent in prison in solitary confinement).

{¶48} Moreover, the majority's reference to Article I, Section 10(a) of the Ohio Constitution provides no support for its position. That section does not authorize trial courts to impose no-contact orders as part of a sentence. The language itself specifies that victims' rights to protection are to be delineated by the general assembly as it "shall define and provide by law[.]" Article I, Section 10(a), Ohio Constitution.

{¶49} In sentencing a defendant for a felony, "R.C. 2929.11 and 2929.12 * * * serve as an overarching guide for trial judges to consider in fashioning an appropriate sentence." *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 17. At the sentencing hearing, the trial court is charged with determining, based upon the governing statutes, the appropriateness of prison and community control sanctions. *See* R.C. 2929.19(B)(2), (4). R.C. 2929.13 provides sentencing guidelines based on the type and degree of the offense at issue. *See* R.C. 2929.13. R.C. 2929.13(A) states in part that

> [e]xcept as provided in division (E), (F), or (G) of this section and unless a specific sanction is required to be imposed or is precluded from being imposed pursuant to law, a court that imposes a sentence upon an offender for a felony

may impose any sanction or combination of sanctions on the offender *that are provided in sections 2929.14 to 2929.18 of the Revised Code.*[1]

(Emphasis added.)  R.C. 2929.14 details permissible prison terms, whereas R.C. 2929.15 through 2929.18 discuss community control sanctions.

{¶50}  Once an offender is committed to the prison system, the legislature has authorized the director of rehabilitation and correction or his or her designee to assume legal custody of the offender.  R.C. 5120.01.  In addition, the legislature has provided that "[a]ll duties conferred on the various divisions and institutions of the department by law or by order of the director shall be performed under the rules and regulations that the director prescribes and shall be under the director's control."  R.C. 5120.01.  Unsurprisingly, the Ohio Administrative Code contains provisions regulating inmate conduct.  *See, e.g.,* Ohio Adm.Code 5120-9-06(C).

{¶51}  If the trial court sentences an offender to nonresidential community control pursuant to R.C. 2929.17, the trial court is charged with doing several things.  For instance, the trial court is required to "impose as a condition of the sanction that, during the period of the nonresidential sanction, the offender shall abide by the law and shall not leave the state without the permission of the court or the offender's probation officer."  *See* R.C. 2929.17.  Additionally, the trial court is required to

> notify the offender that, if the conditions of the sanction are violated, if the offender commits a violation of any law, or if the offender leaves this state without the permission of the court or the offender's probation officer, the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the specific prison term that may be imposed as a sanction for the violation, as selected by the court from the range of prison terms for the offense pursuant to section 2929.14 of the Revised Code.

---

[1] R.C. 2929.13(A) additionally provides that "if the court is required to impose a mandatory prison term for the offense for which sentence is being imposed, the court * * * may not impose any additional sanction or combination of sanctions under section 2929.16 or 2929.17 of the Revised Code."

R.C. 2929.19(B)(4).

{¶52} As the majority points out, no-contact orders are not specifically mentioned in the felony sentencing statutes. However, R.C. 2929.17 provides a list of possible penalties that are prefaced with the language that the sanctions that may be placed upon an offender under nonresidential community control "include, but are not limited to," those in the list. Accordingly, it is reasonable to place a no-contact order in the category of non-residential community control sanctions. *See, e.g., State v. Miller,* 12th Dist. Butler No. CA2010-12-336, 2011-Ohio-3909, ¶ 21; *State v. Walton,* 3d Dist. Wyandot Nos. 16-12-13, 16-12-14, 2013-Ohio-2147, ¶ 7. Further, I cannot locate any other category of penalty in the felony sentencing statutes under which it would it would seem appropriate to place no-contact orders.

{¶53} Thus, I would conclude that, in imposing a no-contact order on Mr. Anderson, the trial court imposed a nonresidential community control sanction pursuant to R.C. 2929.17. Starting with that premise, the next question is whether the trial court, after sentencing Mr. Anderson to prison for both offenses, could also impose a community control sanction pursuant to R.C. 2929.17.

{¶54} Notably, as discussed above, R.C. 2929.13(A) does provide in part that,

[e]xcept as provided in division (E), (F), or (G) of this section and unless a specific sanction is required to be imposed or is precluded from being imposed pursuant to law, a court that imposes a sentence upon an offender for a felony may impose any sanction or combination of sanctions on the offender that are provided in sections 2929.14 to 2929.18 of the Revised Code.

Thus, on its face, that section would appear to authorize a trial court to sentence a defendant to both prison under R.C. 2929.14 and impose a no-contact order under R.C. 2929.17, provided the prison term is non-mandatory. *See* R.C. 2929.13(A). However, given the nature and scheme of the felony sentencing statutes, it appears that the legislature did not intend to authorize the

imposition of nonresidential community control sanctions for any offenders who are in prison. *See State ex rel. Shisler v. Ohio Pub. Emps. Retirement Sys.,* 122 Ohio St.3d 148, 2009-Ohio-2522, ¶ 20 ("[W]e read all statutes relating to the same general subject matter together and interpret them in a reasonable manner that give[s] proper force and effect to each and all of the statutes.") (Internal quotations and citations omitted.) Furthermore, if the legislature had intended to allow individuals sentenced to non-mandatory prison time to be simultaneously subject to community control sanctions, the result would be particularly anomalous when an offender is sentenced for offenses that include both a mandatory prison term and a non-mandatory prison term.[2] Under that scenario, a trial court would be precluded from imposing any nonresidential sanction provided in R.C. 2929.17 in connection with the mandatory prison sentence, yet at the same time could impose that same prohibited sanction in connection with the non-mandatory prison sentence.

{¶55} The basic assumption underlying the imposition of a nonresidential community control sanction is that the offender is out in the community. Accordingly, the trial court has discretion to impose a variety of sanctions designed to proscribe certain conduct and encourage or even mandate other conduct. This becomes apparent when one considers that, in imposing a nonresidential community control sanction, the trial court is *mandated* to require the offender not to leave the state absent permission of the offender's probation officer. *See* R.C. 2929.17. If the legislature intended to authorize the imposition of nonresidential community control sanctions when imposing a prison sentence, then this mandatory requirement makes no sense because, if an offender is in prison, it would be impossible for him or her to leave the state (absent escaping from prison). Moreover, offenders who are in prison do not have probation officers, and, thus,

---

[2] Such would be the case for Mr. Anderson given that he was sentenced to mandatory and non-mandatory prison terms. *See* R.C. 2929.13(F).

they cannot obtain permission to leave the state from a probation officer. Further, in imposing a community control sanction, the trial court must also inform the offender of the penalties for violating the sanction, which could include prison. *See* R.C. 2929.19(B)(4). However, if the offender is in prison to begin with this would make no sense. It is also apparent that advising an already imprisoned offender that the violation will result in prison does not pose much of an incentive to the offender to not violate the community control sanction. Accordingly, if a trial court was able to impose a prison term along with a community control sanction simultaneously, it does not appear there would be any real penalty for the offender failing to abide by the community control sanction.

{¶56} Thus, if a portion of R.C. 2929.13(A) is read in isolation, it appears that an offender with a non-mandatory prison term could receive both prison and a nonresidential community control for the same offense. However, it is evident that any attempt to apply R.C. 2929.17 to an offender sentenced to prison leads to absurd results. Thus, reading the felony statutory scheme as a whole, it is apparent that the legislature did not authorize the imposition of nonresidential community control sanctions when sentencing an offender to a term of prison. Accordingly, I would conclude that when a trial court sentences a defendant to prison for a felony offense, the trial court lacks authority to additionally impose a no-contact order as part of the sentence for that offense.

{¶57} While I share the majority's concern for the mental well-being of the victim, I also reach this conclusion given that the legislature has enacted statutes pertaining to the establishment and operation of the state correctional system and there are many avenues for protection of the victim. *See generally* R.C. 5120.01et seq. As part of this system, there is a great deal of oversight concerning a prison inmate's conduct. As noted above, once the offender

is in prison there are rules in place to regulate the individual's conduct. *See* Ohio Adm.Code 5120-09-06. There is already a provision within the Ohio Administrative Code that indicates it is a violation of the inmate rules of conduct to "[u]se [] telephone or mail to threaten, harass, intimidate, or annoy another." Ohio Adm.Code 5120-9-06(C)(55). Punishments for violations of the inmate rules of conduct are detailed in Ohio Adm.Code 5120-9-07 and 5120-9-08. *See* Ohio Adm.Code 5120-9-06(B). However, they are not limited to those penalties. Both Ohio Adm.Code 5120-9-07 and 5120-09-08 indicate that nothing in either rule "shall preclude department staff from referring such inmate conduct to law enforcement for prosecution as a criminal offense, or the state from prosecuting such conduct as a criminal offense." *See* Ohio Adm.Code 5120-9-07, 5120-9-08. Thus, the mere fact that the trial court cannot issue a no-contact order as part of a sentence in these particular circumstances does not mean that the victim would be unprotected from harassment by the imprisoned offender.

{¶58} Because I can find no authority for the trial court to sentence Mr. Anderson to prison and impose a no-contact order simultaneously, I would sustain Mr. Anderson's eighth assignment of error and vacate the no-contact order from his sentence.

{¶59} In light of the resolution of Mr. Anderson's eighth assignment of error, his ninth assignment of error would be moot, and I would decline to address it.


APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.