[Cite as *State v. Clayton*, 2014-Ohio-2165.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | | C.A. No. 26910 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT |
| | | ENTERED IN THE |
| DOYLYN CLAYTON | | COURT OF COMMON PLEAS |
| | | COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 12 09 2722 |

DECISION AND JOURNAL ENTRY

Dated: May 21, 2014

WHITMORE, Judge.

{¶1} Appellant, Doylyn D. Clayton, Jr., appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.

I

{¶2} On June 19, 2012, Joseph and Carol Cameron (collectively, "the Camerons") found a car for sale on Craigslist. After contacting the number provided in the ad, they arranged to view the car at an address in Akron. Upon arrival, an unidentified man told them the car was in a garage behind the house. As the Camerons rounded the corner of the house, they were confronted by three men with guns. The gunmen robbed them of the $450 that the Camerons brought as a down payment and personal effects.

{¶3} Investigators identified the Appellant, Clayton, using the information posted on the Craigslist ad. Clayton admitted to posting the Craigslist ad, being present during the robbery of the Camerons, and splitting the proceeds of that robbery. He gave only the first names of the

other co-defendants, whom police never identified. Clayton denied that there were three guns involved, claiming that only one BB gun was wielded by a co-defendant.

{¶4} A jury found Clayton guilty of two counts of aggravated robbery and two accompanying firearm specifications. The record reveals that the court gave an instruction for complicity. He was sentenced to five years of incarceration for each of the aggravated robbery convictions and three years for each of the firearm specification convictions. The court ordered all sentences to run consecutively. Clayton now appeals and raises five assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT ERRED WHEN IT DENIED THE CRIMINAL RULE 29 MOTION FOR A JUDGMENT OF ACQUITTAL FOR THE FIREARM SPECIFICATIONS BECAUSE THE STATE FAILED TO MEET THE BURDEN OF PRODUCTION THAT APPELLANT POSSESSED AN OPERABLE FIREARM.

{¶5} In his first assignment of error, Clayton argues that the State failed to present sufficient evidence to support the firearm specification charges. We disagree.

{¶6} "'We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 23, quoting *State v. Vargas*, 9th Dist. Lorain No. 12CA010195, 2013-Ohio-4281, ¶ 5. "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). When reviewing a conviction for

sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶7}** Clayton contends that the State did not produce sufficient evidence that an operable firearm was used during the aggravated robberies. He bases this contention on the State's failure to show that the weapon used (1) was a real firearm and (2) that it was operational. Based on the applicable standard of review, we affirm the trial court's denial of Clayton's Crim.R. 29 Motion for Acquittal.

**{¶8}** The Ohio Revised Code defines "firearm" as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1). Proof of the operability of a firearm can be established by circumstantial evidence, which can consist of the brandishing of a firearm by the defendant and an implicit threat to shoot it. *Thompkins*, 78 Ohio St.3d at 384. *Accord* R.C. 2923.11(B)(2).

**{¶9}** Joseph Cameron testified that all three men had guns, but that Clayton was the gunman wielding the largest gun. He testified that Clayton was holding a "shiny, large gun" in his face, which "pretty much looked like a nine-millimeter." Joseph testified that, based on the way Clayton was shaking and the weight of the gun, it was real and not a BB gun. Further, he explained that he knew it was not a BB gun by the diameter of the hole at the end of the barrel. Joseph could see the end of the gun because Clayton pointed it approximately one foot from his face. He testified that he was a mechanic and had a good sense of measurements. While not a gun expert, Joseph testified that he is familiar with guns and owns guns.

{¶10} Carol also testified that there were three guns, the largest being wielded by Clayton. She testified that she thought the other two guns were .22s because she formerly owned a .22 and was familiar with the appearance.

{¶11} Joseph called 911 shortly after the robbery. A tape of that call was played for the jury. It corroborates the Camerons' testimonies concerning the descriptions of the guns used.

{¶12} Based on the record, the State produced sufficient evidence that the weapon used by Clayton during the robbery was a firearm. Both Camerons testified that the firearms were real. They offered descriptions of each firearm, relying on their familiarity with firearms.

{¶13} Additionally, the State produced sufficient evidence that the firearm was operational by the circumstantial evidence of Clayton's actions. The Ohio Supreme Court decision in *Thompkins* not only supplied the standard of review, but also decided the sufficiency of the evidence for proof of operability of a firearm. The Supreme Court of Ohio found that witness testimony that the defendant was holding a gun while committing a robbery created an implicit threat to shoot and was sufficient proof of operability. *Thompkins*, 78 Ohio St.3d at 382-384 (reversing the lower court's holding that there was insufficient evidence of operability based on the facts that the firearm was not recovered, no physical evidence of operability was offered, and the defendant did not verbally threaten to shoot the victim). *See also State v. Hayes*, 9th Dist. Summit No. 22168, 2005-Ohio-1464, ¶ 20. In the present case, the witnesses testified that the defendant was holding a gun to their heads while they were being robbed of their money and personal effects, which constitutes an implicit threat. Therefore, the State offered sufficient circumstantial evidence that the firearm was operable.

{¶14} Based on the record, viewed in a light most favorable to the prosecution, the State presented sufficient evidence that a jury could find beyond a reasonable doubt that Clayton possessed an operational firearm.

{¶15}  Clayton's first assignment of error is overruled.

Assignment of Error Number Two

THE JURY FINDING THAT THE STATE PROVED THE FIREARM SPECIFICATION BEYOND A REASONABLE DOUBT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶16}  In his second assignment of error, Clayton argues that his firearm convictions are against the manifest weight of the evidence.  We disagree.

{¶17}  In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the fact-finder's resolution of the conflicting testimony.  *Thompkins*, 78 Ohio St.3d at 387.

{¶18}  Clayton contends that his consistent claim, and sworn testimony, that the weapon used in the robbery was a BB gun, coupled with the fact that no firearm was recovered, makes his convictions for firearm specifications against the manifest weight of the evidence.

{¶19}  To support a conviction for a firearm specification, a factfinder must have found that the defendant had a firearm on or about his person or under his control while committing the

offense and displayed, brandished, or indicated possession of the firearm or used it to facilitate the offense. R.C. 2941.145. The Ohio Revised Code defines "firearm" as a deadly weapon capable of expelling or propelling projectiles by the action of an *explosive or combustible* propellant. (Emphasis added.) R.C. 2923.11(B)(1). While a spring action BB gun can be a deadly weapon, it is not a firearm as defined by R.C. 2923.11(B)(1). *State v. Gray*, 20 Ohio App.3d 318, 319 (8th Dist.1984). However, where no weapon is recovered, and testimonies conflict as to whether the weapon used was a firearm or a BB gun, the jury is free to determine whether the weapon was a firearm or a BB gun. *State v. Stadmire*, 8th Dist. Cuyahoga No. 81188, 2003-Ohio-873, ¶ 43-48. *See* R.C. 2923.11(B)(2).

**{¶20}** As Clayton does not contest his convictions for aggravated robbery, the underlying offense, we limit our review to the record pertaining to the weapons used in the offense. In weighing this evidence, we incorporate the facts from Assignment of Error Number One which support the finding that Clayton possessed an operable firearm which he displayed and used to facilitate the aggravated robbery. As such, we examine additional evidence that supports Clayton's convictions for the firearm specification and evidence presented that supports Clayton's contention that a BB gun was used to facilitate the offense.

**{¶21}** Detective Pasheilich investigated the aggravated robbery and testified at Clayton's trial. He conducted an initial interview with Clayton, which was recorded and played into evidence at trial. During that interview, Clayton admitted to participating in the robbery. However, he told Detective Pasheilich that "Chris," one of the unapprehended co-defendants, was the only offender with a weapon and that it was a BB gun, not a real gun. Clayton allowed Detective Pasheilich to search through Clayton's cell phone. Detective Pasheilich found a text message from Clayton, dated two days after the robbery, asking "Jontae," the second

unapprehended co-defendant, for a "strap." Clayton confirmed to Detective Pasheilich that "strap" meant gun. He did not qualify the meaning to include BB gun during this interview.

{¶22} During Detective Pasheilich's second interview with Clayton, also played for the jury at trial, Clayton continued to maintain that he did not have a weapon, but that "Chris" used a BB gun during the robbery. Detective Pasheilich testified that no gun, BB or otherwise, was recovered in connection with this robbery.

{¶23} At trial, Clayton's testimony did not contradict his recorded statements to Detective Pasheilich concerning the weapon. He testified that "Chris" used a BB gun to rob the Camerons and he was unarmed. During his testimony, Clayton added that, following the robbery, "Chris" had shown him the compartment on the weapon in which the air cartridge is inserted. Clayton admitted to the jury that he never shared this information during either of his two interviews with Detective Pasheilich. He testified concerning the June 21, 2013 text message in which he asked to use a "strap." He admitted that he was asking to use a gun. During cross-examination, when asked to tell the jury what a strap was, he testified that it means gun. When the prosecutor sought to clarify that it was not a BB gun, Clayton testified that it could mean either a real gun or a BB gun.

{¶24} The jury had the opportunity to weigh Clayton's recorded statements and testimony against those of the Camerons. As set out in Assignment of Error Number One, the Camerons both testified that they were robbed by three men, all with real guns. The Camerons' version of the events is corroborated by the recorded call to 911. At trial, both the Camerons identified Clayton as the gunman wielding the largest gun, which Joseph was able to describe in detail.

**{¶25}** After reviewing the facts, we are unable to conclude that the jury lost its way and created a manifest miscarriage of justice when it found that Clayton had a firearm and displayed it in furtherance of the robbery, in violation of R.C. 2941.145. "This Court will not overturn a conviction because the jury chose to believe the testimony offered by the prosecution." *State v. Tobey,* 9th Dist. Medina No. 05CA0103-M, 2006-Ohio-5069, ¶ 27. The jury had the opportunity to view the witnesses' testimony and adjudge their credibility; therefore, we must give deference to the jurors' judgments. *State v. Young*, 9th Dist. Summit No. 22636, 2006-Ohio-68, ¶ 35, citing *State v. Lawrence*, 9th Dist. Lorain No. 98CA007118, 1999 WL 1140881, *6 (Dec. 1, 1999). Clayton's convictions under the firearm specification were not against the manifest weight of the evidence.

**{¶26}** Clayton's second assignment of error is overruled.

<u>Assignment of Error Number Three</u>

THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE THE TWO CONVICTIONS FOR ROBBERY.

**{¶27}** In his third assignment of error, Clayton argues that his two aggravated robbery convictions should have merged because Clayton acted with a single animus as part of a single transaction. We disagree.

**{¶28}** A trial court's determination of whether offenses are allied offenses of similar import is reviewed de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1.

**{¶29}** Ohio's allied offense statute, R.C. 2941.25, provides as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the

indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Thus, two or more offenses arising from the same conduct and of similar import must result in only one conviction. R.C. 2941.25(A). "[S]ame conduct" is defined as "'a single act, committed with a single state of mind.'" *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., concurring in judgment only). However, multiple convictions for two or more offenses are appropriate when any one of the following is found: (1) the offenses are of dissimilar import; (2) they are committed separately; or (3) the defendant possesses a separate animus as to each. R.C. 2941.25(B). *See State v. Hayes,* 9th Dist. Summit No. 26388, 2013-Ohio-2429, ¶ 31.

{¶30} Multiple convictions are proper when a single act is committed against multiple victims and that act constitutes an offense which is defined in terms of conduct toward another. *State v. Jones*, 18 Ohio St.3d 116, 117-118 (1985). Such an act constitutes two offenses of dissimilar import. *Id.* at 118. Further, "[w]here a defendant commits the same offense against different victims during the same course of conduct, a separate animus exists for each victim such that the offenses are not allied, and the defendant can properly be convicted of and sentenced on multiple counts." *State v. Chaney*, 8th Dist. Cuyahoga No. 97872, 2012-Ohio-4934, ¶ 26. *Accord State v. Franklin,* 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 48; R.C. 2941.25, Legislative Service Commission Note (1973). Aggravated Robbery is an offense based on conduct toward another. *State v. Tapscott*, 7th Dist. Mahoning No. 11 MA 26, 2012-Ohio-4213, ¶ 42. Therefore, one act of aggravated robbery against multiple victims constitutes offenses of dissimilar import. *Id.*

**{¶31}** Clayton was convicted of two counts of aggravated robbery under R.C. 2911.01(A)(1), one for each victim. Because aggravated robbery is an offense against another, *Tapscott* at ¶ 42, a separate animus exists for each victim. *Chaney* at ¶ 26. Therefore, these offenses are of dissimilar import, and would not merge under R.C. 2941.25. *See Jones*, 18 Ohio St.3d at 118; *Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304 at ¶ 48.

**{¶32}** Clayton's third assignment of error is overruled.

<u>Assignment of Error Number Four</u>

THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE THE TWO FIREARM SPECIFICATIONS AS OCCURING WITHIN A SINGLE ACT OR TRANSACTION.

**{¶33}** Clayton argues that his gun specification convictions should merge because the underlying felonies occurred as part of the same act or transaction. We disagree.

**{¶34}** The jury convicted Clayton on two gun specifications, in connection with his two convictions for aggravated robbery. Clayton argues that the sentencing judge erred by sentencing Clayton to more than one three-year sentence for the two firearm convictions because the underlying felonies were part of the same act or transaction. To support this proposition, he cites former R.C. 2929.14(D)(1)(b), now R.C. 2929.14(B)(1)(b), and case law that predates a significant exception to this provision of law.

**{¶35}** Gun specification convictions, found in connection with certain felony convictions, including aggravated robbery, are excluded from the same act or transaction sentencing qualification to R.C. 2929.14(B)(1)(a). *See* R.C 2929.14(B)(1)(b) citing R.C. 2929.14(B)(1)(g).

**{¶36}** Clayton was sentenced for his gun specification convictions pursuant to R.C.2929.14(B)(1)(a)(ii) which provides that a court shall impose a three-year mandatory prison

term upon an offender convicted of a firearm specification described in R.C. 2941.145 *and* convicted of a felony.

**{¶37}** The substance of Clayton's argument is based in R.C. 2929.14(B)(1)(b), which states in pertinent part:

> *[e]xcept as provided in division (B)(1)(g) of this section*, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction.

(Emphasis added).

**{¶38}** However, Clayton's convictions fall into the above emphasized exception, which reads:

> [if] an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are * * * aggravated robbery * * * and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court *shall* impose on the offender the prison term specified under division (B)(1)(a) of this section *for each* of the *two* most serious specifications[.]

(Emphasis added.) R.C. 2929.14(B)(1)(g).

**{¶39}** Thus, the trial court is precluded from merging firearm specification convictions where (1) a defendant is convicted of two felonies, one of which is aggravated robbery and (2) the defendant is also convicted of firearm specifications under R.C. 2929.14(B)(1)(a) in connection with both of those felonies. *See State v. Murphy*, 8th Dist. Cuyahoga No. 98124, 2013-Ohio-2196, ¶ 7. *See also State v. Cash*, 9th Dist. Summit No. 24975, 2010-Ohio-4454, ¶ 20.

**{¶40}** Clayton was convicted of two counts of aggravated robbery, both felonies, in violation of R.C. 2911.01, and convicted of two gun specifications of the type described in R.C. 2941.145 in connection with those aggravated robberies. According to the plain language of R.C. 2929.14, the trial court was precluded from merging Clayton's two gun specifications.

**{¶41}** Clayton's fourth assignment of error is overruled.

Assignment of Error Number Five

THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES ON THE TWO ROBBERY CONVICTIONS IN VIOLATION OF R.C. 2929.14(C)(4).

**{¶42}** Clayton argues that the trial court did not make the requisite findings to support the order that his sentences for aggravated robbery be served consecutively. We agree.

**{¶43}** A plurality of the Supreme Court of Ohio held that appellate courts should implement a two-step process when reviewing a felony sentence. *State v Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 26. The first step, reviewed de novo, is to ensure that the trial court complied with applicable rules and statutes in imposing the sentence. *Id.* If the first step is satisfied, the second is to review the term of imprisonment for an abuse of discretion. *Id.*

**{¶44}** According to R.C. 2929.14(C)(4), before a trial court may impose consecutive sentences, it must make three findings: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that at least one of the three findings set forth in R.C. 2929.14(C)(4)(a)-(c) applies. At sentencing, the court need not use "'talismanic words'" when making its findings. *State v. Anderson*, 9th Dist. Summit No. 26640, 2014-Ohio-1206, ¶ 17, quoting *State v. Brooks,* 9th Dist. Summit Nos. 26437 & 26352, 2013-Ohio-2169, ¶ 12-13. However, the transcript of the sentencing hearing must clearly indicate that the court engaged in the appropriate analysis and made the required findings. *Brooks* at ¶ 12–15 (reversing trial court's order of consecutive sentences because the sentencing transcript was devoid of the level of detail to support a

conclusion that the trial court engaged in the appropriate analysis). *See also State v. Cowins,* 1st Dist. Hamilton No. C–120191, 2013-Ohio-277, ¶ 35.

**{¶45}** At the sentencing hearing, the trial court found that "while [Clayton] does not have a criminal history, the harm in this case where you have two victims who were deceived into coming to Akron through the craigslist ad and taken to the back of an abandoned house, put down on their knees at gunpoint * * * in the court's opinion, a single term * * * does not adequately reflect the seriousness of the conduct of the defendant in this case."

**{¶46}** Arguably, these findings support the conclusion that the court considered whether consecutive sentences were necessary to protect the public and whether the crime committed was so great or unusual that no single prison term would adequately reflect the seriousness of the offender's conduct. However, the court made no statement that would allow us to conclude that it considered whether consecutive sentences would be disproportionate to the offender's conduct and to the danger the offender poses to society. Because the court did not make the requisite statutory findings under R.C. 2929.14(C)(4), we sustain Clayton's fifth assignment of error and remand the case to the trial court to determine if consecutive sentences are appropriate.

**{¶47}** Clayton's fifth assignment of error is sustained.

### III

**{¶48}** Clayton's first, second, third, and fourth assignments of error are overruled. His fifth assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

CARR, J.
CONCURS.

HENSAL, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶49} As I explained in *State v. Brooks*, 9th Dist. Summit Nos. 26437, 26352, 2013-Ohio-2169, the Revised Code does not require a trial court to set forth its findings under Section 2929.14(C)(4) on the record at the sentencing hearing or in its sentencing entry. *Id*. at ¶ 22-24. The record must indicate, however, that the court made the requisite findings. In this case, the trial court did not state on the record at the sentencing hearing or write in its sentencing entry that

it had made the findings required for consecutive sentences, and whether the court complied with Section 2929.14(C)(4) cannot be inferred from its limited remarks. Accordingly, while I disagree with the majority's analysis, I agree that this case must be remanded for resentencing.

APPEARANCES:

DONALD GALLICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.